(C. D. 717)

DETROIT & CANADA TUNNEL CORP. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided January 7, 1943)

*Charles E. Lewis* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney); for the defendant.

*John J. Gafill*, amicus curiae.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: These actions were brought in December 1940 and February 1941, to recover duties assessed by the collector of customs at the port of Detroit, Mich., on the value of repairs made in Canada to certain motorbusses of United States manufacture. By agreement of counsel and with the approval of the court the two suits were consolidated for trial and they were submitted for decision on a stipulation of fact in which both parties joined. The essential facts in the stipulation are summarized herewith.

Plaintiff is a Michigan corporation which owns and operates a line of motor-driven passenger busses between Detroit, Mich., and Windsor, Ont., partly through the streets of Detroit and partly through a tunnel (also owned by plaintiff) under the bed of the Detroit River. In Detroit the busses traverse the streets of the shopping district for several blocks but their traffic there is limited to discharging passengers from Windsor and taking on those bound for Windsor. The license from the city of Detroit under which plaintiff uses the streets of the city does not permit it to engage in any local traffic. At Windsor the busses do not leave the terminal yard of the plaintiff, the passengers being landed there and passed through the customs and immigration offices to the street. In Detroit the busses likewise pass customs and immigration offices before they enter on the city streets. At Windsor plaintiff maintains a garage, repair shops, and service station and any busses requiring repairs are sent to Windsor for that purpose. All of the busses and service vehicles are of United States manufacture. The stipulation further recites that—

On April 16th, 1940, following an investigation by the Customs Agency Service, the plaintiff was notified by the Collector of Customs at Detroit, that the Bureau of Customs had held that repairs made to the passenger buses and service vehicles as above described, were dutiable "on the ground that the coaches in question are owned and operated by an American corporation, the Detroit and Canada Tunnel Corporation, successors to the Detroit and Canada Tunnel Company, and are 'domestic' within the meaning of Article 231 (c) of the Customs Regulations of 1937 and, as such, repairs thereto made in Canada, except those specified in the last two clauses of Paragraph (b), are of a kind for which entry should be made and duties paid thereon  *  *  *  when the coaches were first returned to the United States, even though in international traffic."

Duty was assessed following the holding of the Bureau of Customs, at the rate provided in paragraph 369 of the Tariff Act of 1930 for "motor busses designed for the carriage of more than ten persons." The collector gave no explanation of his assessment but we may assume it was under paragraph 1615 (g) of the same act, as amended by section 35 of the Customs Administrative Act of 1938 (50 Stat. 1077, U. S. C. Supp. V, title 19). Said paragraph 1615 (g) as amended reads as follows:

PAR. 1615. * * *.

(g) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph.

It is observed that there was no formal appraisement of the items covered by protest 32021–K, but plaintiff has waived that point.

Lengthy briefs by counsel on both sides and one by *amicus curiae* have been filed with us and they present a review of past rulings of the Treasury Department respecting the customs treatment of railroad cars and locomotives crossing the international boundaries of the United States in the actual business of conveying passengers and merchandise. Plaintiff's attorney argues that these rulings on railroad cars and locomotives constitute an established practice which requires that repairs made in a foreign country to American-made motor-busses sent there for repair be held exempt from duty. His contentions are stated in his brief in the following language:

Plaintiff contends that repairs to the tunnel vehicles in question are not dutiable for the following reasons:

1. The vehicles involved (and necessary repairs thereto) are instruments of international traffic and, as such, are excepted from the application of the customs laws by custom and departmental practice and also by the express provisions of the customs laws and regulations.

2. The provisions of the Tariff Act of 1930 and the Customs Regulations of 1937 relied upon by the collector do not, by their own terms, apply to the repairs in question and are not so intended.

3. The collection of the duties in question is violative of the provisions of the 5th Amendment of the Constitution of the United States.

We have given long and careful consideration to plaintiff's plea but we find ourselves unable to accede to it. The difficulty is, using very homely language, there is no law for it. The assertion in paragraph 1 of the quotation above set forth, that the "vehicles involved (and necessary repairs thereto) are excepted from the operation of the customs laws by custom and departmental practice and by express provisions of the customs laws and regulations" does not accord with the facts. So far from being "excepted from the operation of the customs laws," it is to the regulations under authority of these customs laws that plaintiff appeals to sustain its case.

Stripped of the vast amount of verbiage in which the issue has been enshrouded by the many briefs before us, which we have diligently considered, the fundamentals of the plaintiff's case are (1) that motorbusses returned to the United States after having been repaired in a foreign country are not "articles" as that term is used in the tariff law; (2) that they were not "exported for repair," and (3) that because railroad cars and locomotives used in transporting goods and passengers to and fro between the United States and Canada have not been subjected to customs duty while so engaged, by various rulings of the Treasury Department, repairs made in Canada to motorbusses of domestic origin should also be free of duty.

Taking up these points seriatim, motorbusses are surely "articles." *Junge* v. *Hedden*, 146 U. S. 233, 36 L. ed. 953. They were just as certainly "exported for repair." The repair shop of plaintiff was situated in Canada where, when repairs were necessary, they were sent. At this point it is pertinent to observe that the definition of "exportation" selected from the case of *Swan & Finch* v. *United States*, 190 U. S. 143, 47 L. ed. 984, i. e., "a severance of goods from the mass of things belonging to this country with the intention of uniting them to the mass of things belonging to some foreign country" is not applicable here. The phrase used in paragraph 1615 (g), *supra*, "exported from the United States for repairs or alterations" quite obviously implies an intention or purpose to return them to the United States and not an intention to unite them to the mass of things belonging to some foreign country. And the same reasoning would dispose of the objection that they are not "imported" within the meaning of the tariff act. The subdivision under which duty was assessed does not require that they be "imported" but merely that they "may be returned." Indeed, it has been held on the highest authority that the mere bringing of merchandise into this country constitutes an importation. *Cunard* v. *Mellon*, 262 U. S. 100, 121.

We feel fully justified in holding that the busses are "articles" within the meaning of the statute, that they were "exported for repairs," and that they were returned to the United States after such repairs were completed.

Plaintiff's counsel argues, however—and his argument is based entirely on analogy—that the repairs made to the busses should not be assessed with duty because the Treasury Department has ruled at various times that railroad cars and locomotives, running across the border, carrying passengers and freight in international traffic only, should not be deemed imported merchandise for purposes of tariff duties. A comprehensive review of those rulings is found in *United States* v. *Duluth, Winnipeg & Pacific Railway Co.*, 7 Ct. Cust. Appls. 234, T. D. 36513, a decision cited by both parties to the present controversy in their briefs. In that case a combination mail

and baggage car built in Canada had been running between Duluth and Winnipeg as part of a train regularly operated between those two points, when it was taken off that run and put on another which had both termini in the United States. It continued on this run for several months when the collector at Duluth took cognizance of the matter and required the railway company to make an entry for the car and pay duty thereon. This action was protested by the railway company and the trial court, then the Board of General Appraisers, held, Judge Waite dissenting; in favor of the railway company. On appeal this decision was reversed, the appellate court holding that a foreign-built railway car may be treated as imported merchandise notwithstanding that it had entered the country as part of a railway train engaged in international traffic, and that the company had intended to return the car ultimately to such traffic. The court ruled that the collector's action in requiring formal entry of the car and payment of duty thereon was correct.

Counsel for the plaintiff has apparently been misled by the declaration in the first paragraph of the syllabus to this case as reported, to the effect that an international railway may bring its cars into the United States free of duty in the due course of international and incidental local traffic. This is not what the court held. The sole question before the court for decision involved a foreign-built railway car that had been diverted to use in domestic commerce and the court held it subject to duty under the tariff law. So far as the case has any bearing on the instant controversy, it does not favor plaintiff.

Nor can the rule of long-continued practice, either administrative or judicial, be said to favor plaintiff. In the first place, no such practice has been proven to exist in respect to articles of the character of those in suit, and certainly a practice dealing with totally different articles would be highly irrelevant. The briefs filed on behalf of the plaintiff herein appear to assume that prior to April 16, 1940, there had been a practice established of permitting repaired busses to enter this country without formal entry or payment of duty, but nowhere in the record do we find even an allegation that such is the fact. There is no statement to that effect in the stipulation of fact upon which the instant cases were submitted for decision. In any event, we think rulings made by the Treasury Department in years gone by relating to railroad cars and locomotives, before motorbusses were known, have no possible bearing upon the construction of paragraph 1615 (g), *supra*, which is the only matter that properly concerns us here.

A similar process of reasoning impels us to pass over, without further comment than to say we have read them, the arguments as to whether the assessment complained of constituted a violation of plaintiff's rights under the Fifth Amendment to the Constitution.

Counsel for the plaintiff and counsel for defendant have exhaustively briefed the constitutional question suggested and have argued it at great length. In none of these arguments is paragraph 1615 (g), *supra*, so much as mentioned and yet that is the provision of law under which the collector made his assessment and, as stated above, it is the only one that here concerns us. Moreover Article 408 (b) of the Customs Regulations of 1937 distinctly provides that the provision of law dealing with articles exported for repair and returned "applies to articles of either foreign or domestic origin." We are unable to find any discrimination here.

For the reasons above stated we find that duty was properly assessed upon the repairs to these motorbusses at 25 per centum ad valorem under paragraphs 369 and 1615 (g) of the Tariff Act of 1930, as amended. Plaintiff's claims are therefore overruled.

Judgment for defendant.