(C. D. 905)

F. W. MYERS & CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 23, 1944)

*John J. Gafill* (*H. V. Spike* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: This suit was brought by a customs broker as agent for the real party in interest, the St. Clair Tunnel Co. Eighteen protests were consolidated for trial and the hearing was held at the port of Detroit, Mich. Plaintiff protests the assessment of customs duty upon the value of repairs made in Canada to nine electric locomotives operating between Port Huron, Mich., and Sarnia, Ontario, through the St. Clair Tunnel. Duty was assessed under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom (T. D. 49753), by virtue of paragraph 1615 (g) of the same act as amended by the Customs Administrative Act of 1938. It is claimed by the plaintiff herein that the repairs to the locomotives are free of duty (1) because Canadian duty was paid on six of the locomotives at the time of delivery in Canada and said locomotives thereby became domesticated in Canada at the time of entry; (2) because the remaining three locomotives had been cleared through United States customs, and for the purpose of such international operations were under Canadian supervision and the repairs thereon are not subject to duty.

For convenience of reference we set out the provisions of law and the regulations thereunder insofar as pertinent as follows:

Paragraph 1615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938:

\*     \*     \*     \*     \*     \*     \*

(g) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph.

Article 231 of the Customs Regulations of 1937, in effect at the time of this assessment, insofar as pertinent, is as follows:

(b) Domestic locomotives or other domestic railroad equipment upon which repairs have been made in a foreign country shall be subject upon reentry into the United States to a duty upon the value of the repairs at the rate at which the locomotive or other equipment would be dutiable if imported, but no such duty shall be assessed by reason of repairs required to restore any such article to the condition in which it last left the United States, or by reason of "running" repairs required for the immediate safety of transportation.

(c) For the purpose of this article, locomotives or other railroad equipment manufactured in, or regularly imported into, the United States, and not subsequently cleared through foreign customs into another country, nor used in foreign local traffic otherwise than as an incident of the return of the equipment to the United States, shall be considered "domestic." Other railroad equipment shall be considered "foreign."

Article 408 of the Customs Regulations of 1937, after quoting the provisions in paragraph 1615, *supra*, relating to articles exported from the United States for repairs, provides:

(b) The foregoing provision of law applies to articles of either foreign or domestic origin.

The plaintiff introduced the testimony of four witnesses. Their testimony may be summarized as follows: The St. Clair Tunnel Co. is a corporation created in 1886 by consolidation of the Port Huron Railroad Tunnel Co., a Michigan corporation, and St. Clair Frontier Tunnel Co., a Canadian corporation. At the time of the electrification of the St. Clair Tunnel, in 1908, six of the electric locomotives here involved were supplied to the St. Clair Tunnel Co. by the Westinghouse Electric Manufacturing Co. of Pittsburgh, Pa., and subsequently three additional locomotives were leased from the Canadian National Railway Co. One of the locomotives in the last-named group was purchased from the Westinghouse Co. and two purchased second-hand from the Chicago and South Bend Railroad. These three locomotives were the subject of a Canadian Government customs entry and 1 per centum of the full duty was paid thereon. There is no evidence as to payment of Canadian duty upon the six locomotives acquired in 1908. During the 5 years preceding 1943 a Canadian duty of 1 per centum, of what we understand to be the regular duties, has been paid on American repairs made to these locomotives (p. 25). All of the repairs which were assessed for duty in the instant case were heavy repairs as distinguished from running repairs. All of the locomotives involved were manufactured in the United States.

It further appears from the testimony that these locomotives pick up international west-bound freight and passenger trains at the Canadian yards within the electrification zone, pull them through the tunnel to the Port Huron yard and there pick up east-bound international trains and pull them through the tunnel to the Canadian

yards. At each end of the tunnel the trains are attached to steam locomotives and proceed on their journey either east or west into Canada and United States. This is purely a shuttle service and the locomotives never engage in domestic commerce in either country. Certain heavy repairs, such as changing motors and wheels, are made in the roundhouse in Sarnia, whereas "if an engine is broken up" the repairs are made at Stratford.

The testimony produced on behalf of the Government was confined to the sworn statements of various liquidators connected with the collector's office at the port of entry, in which they each testified that duty was assessed under paragraph 353, *supra*, as modified by the trade agreement with the United Kingdom, by virtue of paragraph 1615 (g), *supra*, as amended by the Customs Administrative Act of 1938.

This court had before it a somewhat similar issue in the case of *Detroit & Canada Tunnel Corp.* v. *United States*, 10 Cust. Ct. 32, C. D. 717. In that case the question for determination was the dutiable status of repairs made in Windsor, Ontario, to automobile busses of United States manufacture owned by a Michigan Corporation and operated for the transportation of passengers and baggage between Detroit, Mich., and Windsor, Ontario, through a tunnel also owned by said Michigan corporation. It was there held that the motorbusses when returned to the United States after having undergone repairs in a foreign country were "articles" as that term is used in paragraph 1615 (g), *supra*, that assessment of duty on such repairs is not a violation of the due process clause of the fifth amendment to the Constitution and that duty was properly assessed upon such repairs under the appropriate paragraph of the Tariff Act of 1930. The court in reaching that conclusion used the following language:

> Taking up these points seriatim, motor busses are surely "articles." *Junge* v. *Hedden*, 146 U. S. 233, 36 L. ed. 953. They were just as certainly "exported for repair." The repair shop of plaintiff was situated in Canada where, when repairs were necessary, they were sent. At this point it is pertinent to observe that the definition of "exportation" selected from the case of *Swan & Finch* v. *United States*, 190 U. S. 143, 47 L. ed. 984, i. e., "a severance of goods from the mass of things belonging to this country with the intention of uniting them to the mass of things belonging to some foreign country" is not applicable here. The phrase used in paragraph 1615 (g), *supra*, "exported from the United States for repairs or alterations" quite obviously implies an intention or purpose to return them to the United States and not an intention to unite them to the mass of things belonging to some foreign country. And the same reasoning would dispose of the objection that they are not "imported" within the meaning of the tariff act. The subdivision under which duty was assessed does not require that they be "imported" but merely that they "may be returned." Indeed, it has been held on the highest authority that the mere bringing of merchandise into this country constitutes an importation. *Cunard* v. *Mellon*, 262 U. S. 100, 121.

We feel fully justified in holding that the busses are "articles" within the mean-

ing of the statute, that they were "exported for repairs," and that they were returned to the United States after such repairs were completed.

Plaintiff's counsel argues, however—and his argument is based entirely on analogy—that the repairs made to the busses should not be assessed with duty because the Treasury Department has ruled at various times that railroad cars and locomotives, running across the border, carrying passengers and freight in international traffic only, should not be deemed imported merchandise for purposes of tariff duties. A comprehensive review of those rulings is found in *United States* v. *Duluth, Winnipeg & Pacific Railway Co.*, 7 Ct. Cust. Appls. 234, T. D. 36513, a decision cited by both parties to the present controversy in their briefs. In that case a combination mail and baggage car built in Canada had been running between Duluth and Winnipeg as part of a train regularly operated between those two points, when it was taken off that run and put on another which had both termini in the United States. It continued on this run for several months when the collector at Duluth took cognizance of the matter and required the railway company to make an entry for the car and pay duty thereon. This action was protested by the railway company and the trial court, then the Board of General Appraisers, held, Judge Waite dissenting, in favor of the railway company. On appeal this decision was reversed, the appellate court holding that a foreign-built railway car may be treated as imported merchandise notwithstanding that it had entered the country as part of a railway train engaged in international traffic, and that the company had intended to return the car ultimately to such traffic. The court ruled that the collector's action in requiring formal entry of the car and payment of duty thereon was correct.

Counsel for the plaintiff has apparently been misled by the declaration in the first paragraph of the syllabus to this case as reported, to the effect that an international railway may bring its cars into the United States free of duty in the due course of international and incidental local traffic. This is not what the court held. The sole question before the court for decision involved a foreign-built railway car that had been diverted to use in domestic commerce and the court held it subject to duty under the tariff law. So far as the case has any bearing on the instant controversy, it does not favor plaintiff.

Nor can the rule of long continued practice, either administrative or judicial, be said to favor plaintiff. In the first place, no such practice has been proven to exist in respect to articles of the character of those in suit, and certainly a practice dealing with totally different articles would be highly irrelevant. The briefs filed on behalf of the plaintiff herein appear to assume that prior to April 16, 1940, there had been a practice established of permitting repaired busses to enter this country without formal entry or payment of duty, but nowhere in the record do we find even an allegation that such is the fact. There is no statement to that effect in the stipulation of fact upon which the instant cases were submitted for decision. In any event, we think rulings made by the Treasury Department in years gone by relating to railroad cars and locomotives, before motor busses were known, have no possible bearing upon the construction of paragraph 1615 (g), *supra*, which is the only matter that properly concerns us here.

A similar process of reasoning impels us to pass over, without further comment than to say we have read them, the arguments as to whether the assessment complained of constituted a violation of plaintiff's rights under the Fifth Amendment to the Constitution. Counsel for the plaintiff and counsel for defendant have exhaustively briefed the constitutional question suggested and have argued it at great length. In none of these arguments is paragraph 1615 (g), *supra*, so much as mentioned and yet that is the provision of law under which the collector made his assessment and, as stated above, it is the only one that here concerns us. Moreover Article 408 (b) of the Customs Regulations of 1937 distinctly provides

that the provision of law dealing with articles exported for repair and returned "applies to articles of either foreign or domestic origin." We are unable to find any discrimination here.

\*　　　\*　　　\*　　　\* •　　　\*　　　\*　　　\*

The reasoning of the court above quoted applies in the instant case. Some points of distinction exist between the facts in the two cases. The motorbusses in the *Detroit & Canadian Tunnel Corp.* case were owned by a domestic corporation. Although the proof of ownership of the locomotives now before us is far from satisfactory, it appears that they were made in the United States.

It will be noted that article 231 (*c*), *supra*, sets forth the conditions under which a locomotive manufactured in the United States shall be deemed "domestic," for the purpose of subdivision (*b*) thereof. One of the conditions outlined is that it shall not have been cleared through foreign customs subsequent to its manufacture in the United States or its regular importation into this country. The second condition laid down is it shall not have been used in foreign local traffic otherwise than as an incident of its return to the United States. The locomotives here involved were admittedly of American manufacture. As to the three locomotives acquired in 1927, the testimony shows that 1 per centum of the Canadian duty was charged. We understand this to mean 1 per centum of the duty ordinarily assessable on locomotives imported into Canada. It is not clear from the record just what special arrangement was made for this class of merchandise upon entry into the Dominion of Canada. As to payment of Canadian duty upon the six locomotives delivered in Canada in 1907 and 1908, positive proof is lacking and we are asked by plaintiff's counsel to indulge in a presumption that such duty was paid to the Canadian Government. It is the opinion of the court that proof should have been adduced on this point and we find no basis for a presumption of payment.

Government counsel in his brief contends that whether or not duty was paid to the Dominion of Canada is immaterial in view of the admitted fact that these locomotives were made in the United States, and therefore are domestic articles. He also contends that the distinction between domestic and foreign locomotives in article 231, *supra*, is immaterial because the Secretary of the Treasury in article 408 (*b*), *supra*, has determined that paragraph 1615 applies to articles of either foreign or domestic origin. It is the opinion of the court that inasmuch as the statute provides that "Any article exported from the United States for repairs \* \* \* may be returned upon the payment of a duty upon the value of the repairs \* \* \*," it is immaterial whether the article exported be domestic or foreign.

Plaintiff contends that repairs to equipment of the kind here involved are exempt by law from customs duties, and cites in support of this contention the case of *United States* v. *Duluth, Winnipeg &*

*Pacific Railway Co.*, 7 Ct. Cust. Appls. 234, T. D. 36513. The matter above set forth from the decision in *Detroit & Canada Tunnel Corp.* v. *United States, supra,* is sufficient answer to this contention.

Plaintiff also urges the existence of a long-continued administrative practice of allowing railroad equipment engaged in international traffic between the United States and the Dominion of Canada free entry into the United States. In answer to that argument, it is sufficient to say that proof is lacking of such long-continued administrative practice. The statements of the Secretary of the Treasury to the collector of customs quoted by the court in the *Duluth, Winnipeg & Pacific Railway Co.*, case, *supra,* cannot be accepted as proof of that condition, because at the time (1882) the laws of the United States contained no provision for duty on repairs to merchandise sent to a foreign country and returned, that provision having first appeared in the Tariff Act of 1913 (paragraph 404).

Moreover, a perusal of the various letters of the Secretary of the Treasury to collectors of customs on the subject of the dutiability of repairs to locomotives and railway cars on regular routes on the borders of contiguous foreign territory, as found in early TREASURY DECISIONS, discloses that they relate to "incidental" repairs, whereas the repairs here involved are admittedly major repairs. Since the enactment of said act of 1913 regulations similar to article 408, *supra,* have been promulgated by the Secretary of the Treasury. (See article 234, Customs Regulations of 1915; article 379, Customs Regulations of 1923; and article 403, Customs Regulations of 1931.) But even if such an administrative practice had been proven, it has been held that an erroneous administrative practice cannot control as against a plain provision of the statute. See *Lloyd* v. *United States,* 9 Ct. Cust. Appls. 280, T. D. 38217; *Pacific Creosoting Co.* v. *United States,* 1 Ct. Cust. Appls. 312, T. D. 31407; *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T. D. 42031.

As to whether the action of the customs officials in assessing duty on these repairs constitutes a violation of the fifth and fourteenth amendments to the Constitution we find nothing in the present record to support that contention of plaintiff.

We therefore find that duty was properly assessed upon the repairs made to the locomotives in question under paragraph 353 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom (T. D. 49753), by virtue of paragraph 1615 (g) of the same act, as amended by the Customs Administrative Act of 1938. Plaintiff's claims are overruled.

Judgment will be rendered for the defendant.