(C. D. 1835)

WINTHROP-STEARNS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 27, 1956)

*Eugene A. Chase* for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before JOHNSON and DONLON, Judges

JOHNSON, Judge: The merchandise involved in this suit was entered as "Mebaroin Tabs (Medicinal coal Tar products nspf)" and was assessed with duty at 7 cents per pound and 45 per centum ad valorem under paragraph 28 of the Tariff Act of 1930, as a medicinal preparation derived from a coal-tar product. It is claimed in the protest that "these Mebaroin tablets are properly classifiable as a product of the United States returned after having been exported without having been advanced in value or improved in condition by any process of manufacture or other means and, accordingly, free of duty under the provisions of Paragraph 1615 (a) of the Tariff Act of 1930 as amended."

(1)

This case has been submitted upon a stipulation reading, in part, as follows:

1. The merchandise in issue is described as Mebaroin tablets, 2,000 bottles of which, each containing 100 tablets, were imported from Canada at the port of Detroit on August 10, 1953 under Entry No. 3040.

2. Said Mebaroin tablets were manufactured by plaintiff herein, prior to August 10, 1953, at its plant in Rensselaer, New York, and exported to Canada in bulk.

3. Said Mebaroin tablets were in no way changed or processed in Canada, but were bottled in Canada, 100 tablets to the bottle, and labels were affixed to such bottles in Canada. The filled and labelled bottles were packed in individual cardboard containers and the containers were packed in corrugated cartons. All of the materials used in packaging was of Canadian origin. In such labelled and packaged condition the merchandise was acceptable to the trade in both Canada and the United States.

4. The following documents were duly filed in connection with said Entry No. 3040, and are hereby offered in evidence without objection:

(a) Declaration of the foreign shipper on consular Form 129, certified by the American vice consul at Windsor;

(b) Affidavit for Free Entry of Returned American Products on customs Form 3311;

5. All regulations prescribed for the allowance of exemption from duty under the provisions of Paragraph 1615 of the Tariff Act of 1930 as amended have been complied with.

6. If said Mebaroin tablets are not properly classifiable under Paragraph 1615 (a) of the Tariff Act of 1930 as amended, they were properly classified by the Collector under Paragraph 28 (a) as medicinals derived from hydantoin.

The issue, accordingly, is whether the merchandise is entitled to free entry under paragraph 1615 (a) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, which reads:

PAR. 1615. (a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means. [Free.]

Plaintiff claims that since the tablets themselves were in no way changed or processed in Canada, they were not advanced in value or improved in condition; that, while the packaging of merchandise is a factor in the selling price, the size or type of container cannot alter the value of the tablets therein. The Government contends, on the other hand, that the merchandise which left the country was in bulk and that the record does not establish that the tablets were not advanced in value or improved in condition through bottling and packaging.

Since it has been agreed that the tablets themselves were in no way changed or processed, it is evident that, considering them apart from the packaging, they were not advanced in value or improved in condition. Had they been imported in bulk, as exported, they would clearly have been entitled to free entry under paragraph 1615 (a), *supra*.

Under tariff statutes, however, the classification of imported merchandise is determined by its condition at the time of importation. *United States* v. *Lo Curto & Funk*, 17 C. C. P. A. (Customs) 342, T. D. 43777; *Leonard Levin Co.* v. *United States*, 27 C. C. P. A. (Customs) 101, C. A. D. 69. The articles of commerce imported here are bottles of Mebaroin tablets, labeled, and packed in cardboard containers. Plaintiff has not established that such articles had no greater value than the merchandise in bulk. On the contrary, it is well known that packaged items sell for more than the same articles in bulk. In finding the proper classification applicable to imported merchandise, the actual nature of the commercial entity involved must be taken as the determinant. *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, 314, C. D. 1619. In the instant case, it is apparent that the merchandise, a medicinal preparation, was bottled to make it readily available to the ultimate consumer. According to the stipulation, it was acceptable to the trade in its bottled and packaged condition. There is no indication that it was acceptable otherwise. It follows that the merchandise as imported had a greater value commercially or had been improved in condition over the merchandise which was exported.

A case with somewhat similar facts is *Lunham & Moore* v. *United States*, 12 Treas. Dec. 218, T. D. 27576. There, bottles of Tabasco sauce, the product of the United States, were shipped to Great Britain, where caps and printed labels were attached and metal sprinklers placed therewith. On their return, the court held that the goods had been advanced in value or improved in condition and were not entitled to free entry as American goods returned. The decision was affirmed on appeal *sub nom Lunham* v. *United States*, 1 Ct. Cust. Appls. 220, T. D. 31258, on the ground that the regulations had not been complied with, without considering the substantive question.

In connection with a shipment of salmon canned in Alaska, and labeled in Canada with labels printed in the United States, the Treasury Department held that such labeling would advance the value of the merchandise and that the merchandise was not entitled to free entry on the ground that section 554 of the Tariff Act of 1922, which permitted the transportation of merchandise from one port of the United States to another through contiguous foreign territory, did not contemplate that any merchandise thus shipped might be advanced in value or condition while in transit. 49 Treas. Dec. 260, T. D. 41356. The decision states:

The attorney questions the fact that attaching labels to the cans advances the value of the salmon and on this point he states that:

There is no improvement in the condition of the commodity itself, but merely an addition of a mark to identify the commodity. Labeling of

salmon at Prince Rupert to meet the business requirements of those engaged in the trade of marketing these products of American fisheries does not in any way change the form or condition of the salmon.

The fact remains, however, that unlabeled salmon or other food products put up in cans or other packages for the retail trade is not salable to the ultimate purchaser unless the packages are labeled. The labels, of course, do not actually advance the value of the product, but labeling renders the goods salable, which they were not before, and hence the commercial value of the goods is advanced.

We think this reasoning is applicable to the facts in the instant case.

Plaintiff relies upon *Pacific Customs Brokerage Company* v. *United States*, 32 Cust. Ct. 530, Abstract 58179, which involved medicinal preparations imported in American-made containers. The containers were held entitled to free entry, since it was stipulated that they were manufactured in the United States and were returned after having been exported, without having been advanced in value or improved in condition. In the instant case, there is no agreement that the merchandise has not been advanced in value or improved in condition.

In *Wilbur G. Hallauer* v. *United States*, 40 C. C. P. A. (Customs) 197, C. A. D. 518, the merchandise consisted of apples of American origin exported to Canada, where they were wiped, graded, and packed. While that was a reappraisement proceeding and the precise point at issue herein was not before the court, the following statements in the decision are pertinent (p. 201):

While it is literally true, as contended by the importer, that apples went out and apples came back, the undisputed facts show that the articles exported to Canada were ungraded apples covered with a film of insecticide spray residue and transported in boxes of an approximate capacity of 35 pounds, whereas the apples returned were wiped, polished, graded, wrapped, and packed in boxes of Canadian origin each weighing 42 pounds net. We share the view of the court below that those changes were sufficient to convert the exported merchandise from "an apple" or "apples" *per se*, as they were alleged to be by the appellant, into a different unit of merchandise or article of trade and constituted "alterations" within the meaning of paragraph 1615 (g), *supra*, the value thereof being represented by items 1 to 7, inclusive.

In like manner, the instant merchandise has been converted from Mebaroin tablets *per se* into a different unit of merchandise or article of trade, namely, Mebaroin tablets in bottles of 100 tablets. The latter is undoubtedly of greater commercial value than the former.

For the reasons stated, we hold that the merchandise herein, Mebaroin tablets in bottles, is not entitled to free entry under paragraph 1615 (a), *supra*, as American goods returned after having been exported, without having been advanced in value or improved in condition. The protest is overruled and judgment will be rendered for the defendant.