(C.D. 3916)

GRAPHICS INTERNATIONAL, INC. *v.* UNITED STATES

---

[22] U.S. Tariff Commission, *Sixth Annual Report* (1922), p. 6.

United States Customs Court, First Division

(Decided November 7, 1969)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Glenn E. Harris* and *Velta Melnbrencis*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: The merchandise in this protest consists of lithographically printed matter, invoiced as "Beaver Dam Magazine Inserts". It was classified under item 274.75 of the Tariff Schedules of the United States as printed matter not specially provided for, printed in whole or in part by a lithographic process, not over 0.020 inch thick, and was assessed with duty at the rate of 12 cents per pound. Plaintiff contends that the merchandise should have been classified under item 274.80 of the tariff schedules as printed matter not specially provided for, printed in whole or in part by a lithographic process, over 0.020 inch thick, and assessed with duty at the rate of 5 cents per pound. An alternative claim, under item 274.65, was abandoned by plaintiff at the trial.

The pertinent provisions of the Tariff Schedules of the United States provide as follows:

> "Printed matter not specially provided for:
> Printed on paper in whole or in part by
> a lithographic process:
> 274.75          Not over 0.020 inch thick_____     12¢ per lb.
> 274.80          Over 0.020 inch thick_____      5¢ per lb."

In addition to the official papers, which were received into evidence without being marked, six exhibits were introduced at the trial, five by the plaintiff and one by the defendant. Plaintiff's exhibit 1, a sample of the article in controversy, consists of a base sheet of lithographically printed paper to which have been glued portions of three separate sheets, each of which represents a part of a forest setting. At the trial

the three sheets were separately numbered as follows: Number 1, the Wrigley boy carrying a log; number 2, a beaver in a pond leading to a dam; number 3, a forest with a beaver and other animals in the background. Sheet number 1 is attached only to the base. Sheets 2 and 3, however, are glued not only to the base but also to each other (at a place marked "X" at the trial). The article is so designed that the base can fold in half, similar to the manner in which a book is closed, causing the three figures to retract. When the insert is opened the figures pop up in three-dimensional fashion.

At the trial it was stipulated that the magazine insert is lithographically printed and that the base measures between 0.007 and 0.00725 inch in thickness, and that the three separate pop-ups each measure 0.005 inch in thickness.

Plaintiff's illustrative exhibit 2, a copy of the May, 1964, *Jack and Jill* magazine, was introduced to show the use of the article in question after importation.

Plaintiff's collective exhibit 3 is an application dated April 24, 1964, by the plaintiff to the Bureau of Customs requesting a ruling on the thickness of the magazine insert in question and four other similarly constructed articles.

Plaintiff's exhibit 4 is a copy of the ruling of the Bureau of Customs, dated January 19, 1965, in response to plaintiff's application. It states that three of the articles submitted were over 0.020 inch thick and therefore subject to duty under item 274.80 and that the Wrigley Zoo pop-up, which is the subject of the instant protest, and one other sample, were not over 0.020 inch thick and therefore were dutiable under item 274.75.

Defendant's illustrative exhibit A is a Wrigley Zoo Ricky Raccoon insert consisting of a single sheet of paper folded and tabbed into itself.

Two witnesses testified at trial, both on behalf of the plaintiff. The first, Mr. William E. Wilson, was vice president of the plaintiff company at the time the article in question was imported. Mr. Wilson, who had cognizance over its production, delivery and sale, testified that it was imported to be inserted into a children's magazine and explained the manner of insertion.

The second, Mr. Douglas Davis, was assistant to the president of plaintiff company, and had general supervision over the production, scheduling, pricing and evaluation of the work done by the design and production departments. Mr. Davis testified that the insert is imported in a flat condition, that it appears that way in the magazine, and that it does not remain open for any substantial length of time because if kept open it would be difficult for the reader to turn the pages of the magazine. He further testified that the most significant

feature of the article, as an advertising medium, is its dramatic attention-attracting value, achieved by having the figures fly up and become fully dimensional when the insert is opened. He stated that the insert can be entirely removed from the magazine by tearing it along a perforated line, and can be joined to other Wrigley Zoo inserts and can be folded easily and put away when not being used by children. Mr. Davis also explained how the merchandise is inserted and bound in the magazine. He stated that it would be virtually impossible for the bindery to handle the merchandise by its automatic machinery, except in its folded position, because the machinery would damage the insert. On cross-examination Mr. Davis agreed that even though the article was imported in a folded condition, it was specifically designed to open and close. He also stated that after importation nothing was done to plaintiff's exhibit 1 to change its composition.

The question presented is whether the article under protest exceeds 0.020 inch in thickness. The answer depends upon what is included in arriving at the dimension of "thickness".

Plaintiff contends that the thickness should be determined by measuring the insert in either of the following two ways: closed, through its greatest thickness, or opened, by adding the separate thicknesses of the base and the individual "pop-ups".

Headnote 3, part 5, schedule 2 of the tariff schedules is intended to give some direction to resolve the question. It provides:

"3. For the purposes of determining the classification of printed matter produced in whole or in part by a lithographic process, the thickness of such printed matter is that of the thinnest paper contained therein, except that the thickness of a permanently mounted lithograph is the combined thickness of the lithograph and its mounting."

While the parties agree that the pop-up figures are permanently mounted lithographs, they disagree on the application of the rule set forth in headnote 3 pertaining to a "permanently mounted lithograph". In an effort to resolve this question the court has investigated the background of that provision in order to ascertain the legislative purpose in drafting the headnote and the result it intended to achieve.

The *Tariff Classification Study of November 15, 1960*, does not contain any explanatory material concerning headnote 3 and indicates (schedule 2, page 136, footnote 1) that the Tariff Commission received no oral or written statements from interested parties concerning part 5, schedule 2 (Books, Pamphlets, and Other Printed and Manuscript Material) of the tariff schedules. However, the *Tariff Classification Study Explanatory Materials* (schedules 1 through 5, Vol. 1, page 220 (1964)) does point out that the provision for lithographic printed matter in items 274.75 and 274.80 of the tariff schedules are derived from para-

graphs 1405, 1406, and 1410 of the Tariff Act of 1930, but principally from paragraph 1406. The pertinent part of paragraph 1406 states:

> "* * * *Provided*, that in the case of articles hereinbefore specified the thickness which shall determine the rate of duty to be imposed shall be that of the thinnest material found in the article, but for the purposes of this paragraph the thickness of lithographs mounted or pasted upon paper, cardboard, or other material shall be the combined thickness of the lithograph and the foundation on which it is mounted or pasted * * *."

Similar language was contained in paragraph 1306 of the Tariff Act of 1922, paragraph 325 of the Tariff Act of 1913, and paragraph 412 of the Tariff Act of 1909. (See *Summary of Tariff Information*, 1920, p. 508; *Summary of Tariff Information*, 1929, p. 1837.) It is to be noted that a provision similar to headnote 3 is found in all tariff acts subsequent to the Tariff Act of 1897. Cases dealing with lithographically printed material decided between 1897 and 1909 reflect a state of uncertainty with respect to the method of determining the thickness or weight of lithographic paper. Thus, in *Palm, Fechteler & Co.* v. *United States*, 7 Treas. Dec. 811, T.D. 25312, Abstract 1486 (1904), which involved paragraph 400 of the Tariff Act of 1897, the importer claimed that decalcomanias lithographically printed on duplex paper should have been assessed with duty only on the weight of the front of the article on which the printed matter appeared, and that the paper backing should not be included. In overruling the protest the Board of General Appraisers ruled that the articles were not to be separated for duty purposes because the double sheets were entireties and formed the lithographic prints.

In *C. H. King* v. *United States*, 8 Treas. Dec. 759, T.D. 25863, G.A. 5873 (1904), lithographed showcards and cardboard placards were assessed with duty at the rate of 6 cents per pound under paragraph 400 of the Tariff Act of 1897, as lithographic prints measuring over 0.020 inch in thickness. The plaintiff claimed that duty should have been assessed only on the weight of the sheet of paper forming the front of the article, since that was the one on which the lithographic design was actually printed. In disallowing the claim the Board of General Appraisers said:

> "This claim is entirely without merit; we are cited to no provision of law in support of it, and we know of none. The articles are entireties, they are lithographic prints, and, under paragraph 400, are dutiable according to their thickness. The law does not contemplate that imported merchandise should be torn apart in order to determine the rate of duty, a course that would be necessary if the contention of the importer were to prevail. It is well known that the 'cardboard or other material, exceeding twenty one-thousandths of an inch in thickness,' mentioned in

paragraph 400 is generally made up of many layers or sheets of paper, superimposed on each other and permanently adhering to each other, constituting an entirety, which is in fact the case in this instance. The claim that duty should be assessed according to the thickness of the top layer would render nugatory the provision in paragraph 400 for lithographs of this character, and its absurdity is manifest. * * *" *Id.* at 760.

The merchandise in *Fuld & Co.* v. *United States*, 138 Fed. 973 (1905), consisted of folding pictures made up of pieces of lithographically printed paper of various designs and thicknesses which were fastened together in such a manner as to form particular designs. Some of the pictures were small figures on tissue paper under 0.008 inch thick, and the rest were over 0.008 and under 0.020 inch thick. In view of their varying thicknesses they were classified as printed matter not otherwise provided for, under paragraph 403 of the Tariff Act of 1897, because there was no provision in paragraph 400 for lithographic prints in part below and in part above 0.008 inch thick. Plaintiff contended that they should have been classified as lithographic prints under paragraph 400 of that act. The question was whether the larger prints or the smaller ones should be measured. In ruling that the thickness of the articles should be based on the thickness of the substantial parts, the Circuit Court, Southern District of New York, said:

"* * * But they are lithographic prints which are the subject of paragraph 400, and seem to be dutiable at some rate fixed there, either according to the highest rate of any part of a print, or according to the actual thickness of the principal and substantial part of each print. These little figures are not parts of the frames and bodies of the prints, but seem to be rather incidents and ornamentations of them, very small in proportionate surface, and still smaller in proportionate weight. Under these circumstances, it seems as if the thickness of the substantial parts should govern." *Id.* at 974.

It is apparent from these cases that uncertainty existed when a question arose as to what was to be included in the thickness or the weight of a lithographic article, especially when a lithographed sheet was somehow attached to another sheet of paper. The Tariff Act of 1909 attempted to resolve some of the uncertainty by adding the following proviso to paragraph 412, similar to headnote 3, *supra:*

"* * * *Provided*, that in the case of articles hereinbefore specified the thickness which shall determine the rate of duty to be imposed shall be that of the thinnest material found in the article, but for the purposes of this paragraph the thickness of lithographs mounted or pasted upon paper, cardboard, or other material, shall be the combined thickness of the lithograph and the foundation on which it is mounted or pasted."

The purpose of the proviso was explained in *Hensel, Bruckmann and Lorbacher* v. *United States*, 23 Treas. Dec. 44, T.D. 32733, G.A. 7382 (1912), *aff'd*, 4 Ct. Cust. Appls. 94, T.D. 33370 (1913), which involved lithographically printed pull cards attached by means of hinged strips of plain paper to heavier paper forming a background. The Board of General Appraisers there said:

> "This proviso as we read it covers two classes of articles, the one where lithographed material is combined to make up articles similar to those here before us, and the other where lithographic prints are mounted, pasted, or superimposed on heavier material in order to give the mounted print the stiffness necessary and incidental to its use, and in which latter class such mounted lithographs as placards, advertising cards, and show cards may be mentioned. As we view the issue it was never intended to include by the description 'mounted or pasted' articles which, like these, have merely had added to them narrow strips or hinges to make up folding pictures. It may well be said that such strips being attached to more than one lithograph they are not the mounts of either of the lithographs, and serve merely to join the one to the other.

> The proviso to paragraph 412 is a new one, not found in whole or in part in the paragraph of the prior tariff providing for the products of lithographic printing, and was manifestly intended to clear up any uncertainty disclosed by litigation interpreting the provisions for lithographed articles under paragraph 400, Tariff Act of 1897. * * *" *Id.* at 45.

The Board then discussed the *King* and the *Fuld & Co.* cases, noted earlier, and said:

> "* * * These decisions were before Congress (Notes on Tariff Revision, 537) when it enacted the tariff law of 1909, and the new matter in the form of the proviso in paragraph 412 is, we are led to assume, an adoption in express words of the construction as laid down in the rulings cited." *Ibid.*

The Board concluded that since the article in question did not fall within the intent of the "combined thickness" portion of the provision, its thickness should be determined by measuring the thinnest sheet, in accordance with the directions in the first part of the proviso.

In *W. White* v. *United States*, 31 Treas. Dec. 589, T.D. 36884, G.A. 8004 (1916), the merchandise consisted of calendars composed of 12 sheets of lithographed paper fastened by three wire staples to a foundation of heavier lithographed paper. It was classified under paragraph 325 of the Tariff Act of 1913, its thickness being determined by measuring the thinnest lithographed sheet. In upholding the classification the Board of General Appraisers said:

> "While we do not mean to be understood as holding that pasting is the only method by which a print may be mounted on paper,

cardboard, etc., in the statutory sense, nevertheless we believe that the use of the words 'or pasted' is strongly indicative of the congressional intention that the print and the foundation upon which it is mounted should, for tariff purposes at least, be treated as one and the same thing—as an article the components of which are so inseparably united as to render it a physical impossibility to measure the thickness of the print without either mutilating or destroying it, or otherwise leaving it commercially valueless, which must inevitably be the result of an attempt to separately measure the thickness of a print after it has been securely pasted to the foundation back. In other words, Congress evidently had in mind that class of lithographed articles where the print, by reason of the permanent character of the method employed in mounting it, has virtually lost the tariff identity as such, and has become rather an integral part of another and separate dutiable entity, to wit, a mounted lithograph, and as such specially provided for *eo nomine* under the proviso to paragraph 325.

If such be the fair interpretation of the legislative conception of what constitutes a mounted lithograph—and the plain language of the paragraph certainly admits of no other view—then these calendar sheets are clearly not mounted within the purview of the law. The method of attachment is such that a single sheet may readily be removed without disturbing the remaining sheets or in any way affecting the general object or usefulness for which the article was specially manufactured and designed. * * *" *Id.* at 591–92.

It appears that the Board, in the *White* case, was of the opinion that the purpose of the "combined thickness" provision was to afford a method for determining the thickness of a lithographic sheet which had been so attached to a backing that to measure only the lithographed sheet would necessitate tearing it from its backing. Based on this understanding of the congressional intent it would seem that since each lithographed sheet of the article at bar could be, and in fact was, separately measured without tearing it from its base, it would not be considered a mounted lithograph. Thus it would be unnecessary to measure any combined thickness of the lithograph and its mounting but rather the thinnest sheet would determine the thickness of the magazine insert.

Two cases subsequent to the *White* case, however, also involving certain calendars, have found that the combined thickness standard applies, notwithstanding the fact that the individual sheets could have been measured separately. *Nippon Yusen Kaisha v. United States*, 43 Treas. Dec. 657, Abstract 45789 (1923), involved calendars consisting of a lithographically printed pasteboard base to which was pasted and stapled a pad consisting of twelve lithographically printed sheets of paper which had been sewed together. The Board of General Appraisers overruled the importer's claim that the calendars exceeded

0.020 inch thick, and relied on the *White* case as authority for the proposition that the sheets were not mounted within the meaning of paragraph 325 of the Tariff Act of 1913. The appellate court, however, in reversing, stated:

> "* * * The pad as found in the importation is an entirety and as an entirety it is not only pasted to the base or foundation but is mounted thereon by attaching it thereto with wire staples. Considering that the statute expressly provides that the thickness of lithographs mounted or pasted on paper, cardboard, or other material shall be the combined thickness of the lithograph and the foundation upon which it is mounted or pasted, and that the thickness of the lithographically printed foundation combined with that of the pad taken as an entirety exceeds twenty one-thousandths of an inch we see no escape from the conclusion that the importation was dutiable at 5 cents per pound under paragraph 325, as claimed by the importer. * * *" 12 Ct. Cust. Appls. 5, 6–7, T.D. 39887 (1923).

The concept of "mounted" was expanded in *United States* v. *Thorens, Inc.*, 32 CCPA 137, C.A.D. 298 (1945), wherein lithographically printed calendars were classified as lithographically printed articles not over 0.012 inch in thickness under paragraph 1406 of the Tariff Act of 1930. The merchandise consisted of a lithographed face sheet, 12 lithographed calendar sheets, and a cardboard back. The pages were fastened to the backing by a circular celluloid-like clip. The clip had a series of open spaces alternating with tongue-like forks, which ran through corresponding slots at the top of the sheets and cardboard backing. In deciding that the calendar was mounted within the meaning of the statute the court said:

> "It may be that until recently to paste a sheet of paper upon a reinforcing ground was not to 'mount' it in the ordinary meaning of the term, and perhaps that is one of the reasons the words 'or pasted' were included in the statute. In any event, an article that is 'mounted' by the process of pasting is now generally accepted as 'mounted' in the ordinary meaning of the term.
>
> *         *         *         *         *         *         *
>
> "To 'mount' an article enumerated in paragraph 1406 by a process other than pasting, manufacturing lithographers utilize a varied and widespread number of devices, contrivances, and expedients, practical, ingenious, and fanciful, and constructed of different types and qualities of material.
>
> "Obviously, Congress intended to place no qualifying provision in the statute as to the innumerable and ever-changing mediums or processes employed by such manufacturers, nor to require of them a specific standard of stability or permanence, relative to the attaching mediums used in the production of a 'mounted' article." *Id.* at 141.

The court then concluded:

> "In our opinion, the decision of the Customs Court, to the effect that the lithographically printed calendar herein was dutiable as an entirety, on the basis of the combined thickness of the foundation and the mounted sheets, and not as lithographically printed articles on the basis of the thickness of the thinnest material found in the article as assessed by the collector of customs, was correct." *Id.* at 141–142.

In both the *Nippon* and the *Thorens, Inc.* cases, the court considered the "entirety" concept as significant. In the former it found that the pad, consisting of 12 sheets which had been sewed together, was an entirety mounted to a base; in the latter it found that the 12 sheets plus the base, all of which were joined together by a single celluloid clip, comprised an entirety.

In the case at bar, there is neither an article in which all the individual sheets were joined to each other before being united to the base, such as the pad in the *Nippon* case, nor an article in which all the individual sheets are joined to the base by a single uniting device, such as the celluloid clip in the *Thorens, Inc.* case. Pop-up number 1 is joined only to the base; pop-up number 2 is joined to the base at one point and to pop-up number 3 at another point; and pop-up number 3 is joined to the base, as well as to pop-up number 2. When the magazine insert is open, figure 1 does not touch figure 2 or 3. The only time any part of figure 1 touches figures 2 and 3 is when the insert is closed, at which time figure 1 is not affixed or mounted to figure 2 or 3, but merely lies flat, in its contracted position, resting between figures 2 and 3. The court is therefore of the opinion that the controverted merchandise is clearly distinguishable from the calendars in the *Nippon* and the *Thorens, Inc.* cases. The reasoning behind those decisions therefore in no way compels a finding that one must add the separate thicknesses of each of the three individual sheets plus the base, as plaintiff suggests, to arrive at the thickness of the magazine insert here in question.

Although the three sheets are not joined as an entirety to the base, there is a place on the insert where two of the sheets (those numbered "2" and "3") are joined together, and this unit is mounted to the base. The Bureau of Customs, in its ruling to plaintiff (plaintiff's exhibit 4) and the Commissioner, found this to be the proper method of measuring the thickness of the article.

Based upon the court's understanding of the intent behind the proviso in question, and the cases which have treated similar provisions under prior tariff acts, the court is of the opinion that the proper method of measuring the thickness of the magazine insert in question is by adding the combined thickness of the lithographic figures marked

"2" and "3", plus the base, as did the Commissioner, and not by totaling the thickness of all three sheets plus the base, as plaintiff suggests.

Plaintiff offers an alternative way to determine the thickness of the merchandise in question, namely by measuring it closed through its thickest point. This contention is based on the rule, fundamental to customs jurisprudence, that the classification of imported merchandise should be determined by its condition as imported. Plaintiff argues that since the merchandise is imported closed, is inserted into the magazine in a closed condition, and is generally kept closed except when being viewed, the thickness should be determined by measuring it closed.

While the court agrees with the fundamental rule cited by plaintiff it is of the opinion that its application to the case at bar is unwarranted. The question is not whether the merchandise as imported is lithographically printed paper but whether its thickness should be determined by measuring it closed merely because it was imported closed.

It is not disputed that at the time of importation the article was, as classified, printed matter, printed on paper by a lithographic process. Whether it is imported closed or opened, or measured closed or opened, in no way affects its nature as printed matter of the type classified. The mere fact that it is more practical or convenient to import or insert the article closed should not be controlling in determining how to measure its thickness. That question relates more to a consideration of the article itself rather than its manner of importation.

The plaintiff has cited and relies upon the following cases: *United States* v. *LoCurto & Funk*, 17 CCPA 342, T.D. 43777 (1929) ; *United States* v. *A. Goldmark & Sons Corporation*, 16 Ct. Cust. Appls. 562, T.D. 43295 (1929) ; *Ringk & Co.* v. *United States*, 10 Ct. Cust. Appls. 107, T.D. 38372 (1920) ; *Winthrop-Stearns, Inc.* v. *United States*, 38 Cust. Ct. 1, C.D. 1835 (1956) ; *Dalton Cooper, Inc., et al.* v. *United States*, 41 Cust. Ct. 271, C.D. 2051 (1958) ; and *Leonard Levin Co* v. *United States*, 27 CCPA 101, C.A.D. 69 (1939). An examination of these cases reveals that they are clearly distinguishable from the case presently before the court.

The early cases indicate that the intended purpose of the combined thickness provision was to afford a method of measuring lithographed sheets which would avoid having to destroy the lithographic sheet in the process of measuring it. The calendar cases of *Nippon* and *Thorens, Inc.*, were not as concerned with the reason behind the rule as they were with the question whether the calendar sheets were mounted within the tariff understanding of that term. Having answered that question affirmatively, they held that, since there was an "entirety" concept inherently connected with the calendars, the combined thick-

ness in those cases would be the thickness of the base plus the thickness of the total number of sheets.

In view of the foregoing the court concludes that the principle relating to permanently mounted lithographs is applicable to the magazine insert herein. This, however, does not necessitate or justify adding the thickness of each lithographic pop-up, plus the base, to arrive at the thickness of the magazine insert. It seems clear that the instant merchandise is distinguishable from the calendars because in the cases dealing with calendars, the sheets were piled one on top of the other in a single layer whereas in the magazine inserts the three sheets are not joined into a single pile. In the instant case, therefore, the combined thickness principle is implemented in conjunction with the entirety concept by measuring the thickness of those two sheets which are united in one layer forming an entirety (figure 2 plus figure 3) and combining that thickness with the thickness of the base. That figure, as found by the collector and the Bureau of Customs, is less than 0.020 inch thick and constitutes the thickness of the printed lithographic merchandise in question.

Furthermore the proper method is to measure the article opened, as the collector did, and not closed. Despite the fact that the insert is imported closed, the arguments by plaintiff that it should be measured closed through its thickest point, are not convincing for the cases upon which it relies on that point are inapplicable.

The plaintiff has failed to rebut the presumption of correctness attaching to the collector's classification and the protest is therefore overruled. Judgment will be entered accordingly.