(C. D. 438)

PRESS WIRELESS, INC. *v.* UNITED STATES

Third Division, United States Customs Court

(Decided February 21, 1941)

*Strauss & Hedges* and *Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the plaintiff.

Before CLINE, EVANS, and KEEFE, Judges

KEEFE, Judge: This case arising at New York involves the question whether or not duty should have been assessed upon the basis of the total value of certain radio tubes which were sent abroad for repairs. Upon export the tubes were marked "S. W. 7 Silica Valve," each having a certain serial number. When returned the valves were marked T. X. 10–3000 with serial numbers from M–23 to M–29. The appraiser returned the merchandise as dutiable upon the full value and stated as his reason that he could not identify it as being the same as exported. He further stated in his report that the original serial numbers had been erased and new numbers substituted and that in making the repairs the type therof was changed and a heavier filament was used, putting the valves in a superior condition to the valves as originally exported. In view of the report of the appraiser, the collector assessed duty upon the total value of the articles under the appropriate paragraph of the Tariff Act of 1930. The plaintiff claims that duty should have been taken upon the cost of the repairs only, under the provisions of paragraph 1615 of the Tariff Act of 1930.

The merchandise was exported under customs supervision and in accordance with the applicable export regulations and upon importation all of the regulations were fully complied with.

At the trial it was established that the foreign manufacturer was instructed to carry out repairs upon the tubes, to wit, to replace filaments damaged through use and to make other necessary repairs so as to restore the tubes to perfect working condition; that the tubes were in the same apparent condition when returned as when originally imported; that the original filaments which had been burned out had been replaced and also certain minor repairs were made; and that such repairs constituted the only changes in the tubes.

It was further established that as imported the amperage of the tubes, which concerns the heating of the filaments, was increased from the original 32 amperes to 53 amperes, but such increase in amperage was not important to the plaintiff's use of the articles and the broadcasting properties thereof were not affected.

It was further established that the S. W. 7 type of tube had become obsolete and was no longer manufactured, having been replaced by the T. X. 10–3000 type; that the tubes returned after repair are the same in construction, operation, performance, and use, and the power output is the same; that in operation tubes of the same type are required to be matched when used in transmitters and the only difference between the tubes as originally imported and the repaired tubes is that the T. X. 10–3000 type are easier to match than the S. W. 7; that the number S. W. 7 still appears upon all of the tubes returned to the plaintiff, although the same is not easily discernable and a tube was brought into court to illustrate that the old marking thereon was not entirely obliterated; and that the tubes exported for repairs are the identical tubes returned.

The Government contends that the original numbers on the tubes were obliterated and new numbers supplied; that the old marks were not discernible and that the Government will not concede that they are the same tubes. It further contends that as a different type and nature of filaments was supplied, the efficiency obtained from the use of the tubes was increased and that such increased efficiency indicated a tube of a different model and consequently the transformation into such improved type amounted to an alteration rather than a repair and therefore the provisions of paragraph 1615 are not applicable to the importation.

The plaintiff contends that the tubes reimported were the same tubes previously exported and that the replacement of the filaments merely restored them to their former useful life and that such restoration constitutes a repair within the meaning of paragraph 1615.

Paragraph 1615 of the Tariff Act of 1930, in respect to repairs, provides as follows:

PAR. 1615. * * * articles exported from the United States for repairs may be returned upon payment of a duty upon the value of the repairs at the rate at which the article itself would be subject if imported, under conditions and regulations to be prescribed by the Secretary of the Treasury: * * *

The Customs Regulations of 1937 in respect to repairs provide:

Art. 408. Articles exported for repairs.— * * * (1) The word "repairs" as used in paragraph 1615 is hereby defined to mean any change, renovation, clean· ing, redyeing, etc., which is necessary to restore an article to its original condition after decay, injury, deterioration, or partial destruction, when such change, renovation, etc., does not destroy the identity of the article exported or create a new or different article.

The question before us is whether or not the repairs performed upon the tubes in order to restore them to their original condition after partial destruction were such as to destroy the identity of the articles exported or were sufficient to create a new or different article.

The evidence presented establishes, in our opinion, that the tubes returned to the United States are the identical tubes exported for repairs. While abroad the worn-out tubes were restored to a condition which prolonged the use for which they were originally designed. True, the materials used to replace the old worn-out filaments were heavier in construction and designed to take a heavier amperage, but as far as the plaintiff's use thereof was concerned there was no difference between the tubes as originally imported and the repaired articles. Another consideration which we think is worthy of note is that the S.W. 7 type of tube had become obsolete and was replaced by a tube with the type number T.X. 10–3000. Consequently, when the tubes were received by the manufacturer materials on hand of an improved type were used in the repairs. Worn-out tubes were exported for repairs and the identical tubes were returned in a condition of restoration to their original efficiency. The fact that an improved type of material was used in the restoration is, in our opinion, immaterial. If an automobile were to be repaired with materials of a heavier and superior quality than the worn-out parts, it would still be the same automobile. The identity thereof would not be destroyed, nor would it be considered a new or different article. A fur coat relined with a superior material would still be the same coat. Here we have a similar situation. The valves or tubes, through repairs thereto, have been restored to their orignial efficiency so as to prolong their usefulness. The fact that in some degree they became more efficient is of no consequence.

For the reasons stated judgment will be rendered in favor of the plaintiff, directing the collector to reliquidate the entry, assessing duty upon the value of the repairs only, and make refund of all duty taken in excess.