(C.D. 2104)

AMITY FABRICS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 20, 1959)

*Brooks & Brooks* (*John Joseph McDermott* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., concurring

JOHNSON, Judge: This is a protest against the collector's assessment of duty on cotton twill-back velveteen, imported from Italy on or about July 20, 1958, at 22½ per centum ad valorem under paragraph 909 of the Tariff Act of 1930, as modified. It is claimed that the merchandise is entitled to free entry under paragraph 1615(a) of said tariff act, as amended, as American goods returned, or, if dutiable, that duty should be assessed only upon the value of the alteration, under paragraph 1615(g) of said tariff act, as amended.

The pertinent provisions of the said tariff act are as follows:

PAR. 909 [as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, effective November 17, 1951, T.D. 52857]:

Pile fabrics (not including pile rib-
   bons), cut or uncut, whether or
   not the pile covers the entire
   surface, wholly or in chief value
   of cotton:
         Twill-back velveteens_____ 25¢ per sq. yd., but not less than 22½% nor
                                       more than 44% ad val.

PAR. 1615(a) [as amended by the Customs Administrative Act of 1938, and 68 Stat. 731]:

Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; * * *. [Free.]

PAR. 1615(g)(1) [as amended by the Customs Simplification Act of 1954]:

Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph (g).

The official papers were received in evidence at the trial. The certificate of registration (customs Form 4455) describes the merchandise as "5 yards Twill Back Velveteen Piece #24599 B Shade 7398 'Pumpkin,'" obtained from Cantoni of Castellanza, Italy, and states that it is to be sent abroad for dyeing to shade "Black." A declaration of the president of the plaintiff corporation states that the entered articles in their altered condition are the same articles as those covered by the registration certificate. Another declaration, by Gian Franco Jucker of Castellanza, Italy, states that the merchandise was subjected only to redyeing, at a cost of 22½ cents per yard. An affidavit of the manager of Cotonificio Cantoni of Castellanza, Italy (plaintiff's exhibit 2), states that the merchandise was redyed after removal of the customs seal and returned to Amity Fabrics, Inc.

James L. Richter, president of Amity Fabrics, Inc., testified that, aside from the usual executive duties, he did all the purchasing of the fabrics his firm imports; that the company has been importing

twill-back velveteens from Cantoni of Castellanza, Italy, for 10 years; that a piece of merchandise, received in evidence as plaintiff's exhibit 3, was the same as that described in the certificate of registration which had been sent to Cantoni for the sole purpose of redyeing it black; and that plaintiff's exhibit 4 represented such merchandise in the shade "Pumpkin," prior to redyeing.

Mr. Richter stated, further, that his firm offers twill-back velveteen in a range of about 60 colors each year and that the redyed piece would be offered at the same price as the "Pumpkin" had been. He said that the redyeing did not change the use of the merchandise and that it is offered to the same trade. It was stipulated that the redyeing in no way changed the quality, texture, or character of the material.

The witness testified that twill-back velveteens in all colors have a landed cost of $1.46 a yard and are offered for sale at $1.72½ a yard or less, depending upon quantity, market conditions, demand, and inventory. When asked why he had the instant merchandise dyed black, he stated:

Black is the easiest color to redye any of the colors that we can't move, and black will cover practically any of the colors that fashion has outmoded.

He added that the color "Pumpkin" was not selling at all this year, but that black is a consistently good seller. He testified further:

X Q. * * * Well, as far as taking these colors which you cannot sell, "Pumpkin" and so forth, it is to your advantage, isn't it, to have these dyed black?—A. It would be to our advantage to have them dyed black, because then we could have a market that probably would receive them, but wouldn't receive the "Pumpkin."

X Q. And so far as you are concerned, Exhibit 3, as compared to Exhibit 4, is in improved condition in terms of the market for you, is it not?—A. I would say that as long as "Pumpkin" is the color that is not desired then the black is an improvement over the "Pumpkin," but it only occurs when fashion doesn't want the "Pumpkin."

X Q. Well, at the moment "Pumpkin" isn't selling, is it?—A. At the moment "Pumpkin" isn't selling, but as I tried to explain before—and probably it doesn't answer your question fully—we are not primarily concerned with redyeing "Pumpkin"; we are primarily concerned in knowing whether or not is is possible for our company that accumulates anywhere between twenty and 50,000 yards annually of colors that go out of fashion, to have them sent back to Italy and have them redyed, not only in black, but perhaps in colors that the original color would permit, like red or brown and navy.

X Q. In other words, what you want to do is dye the fabrics, the velveteens which do not sell in their present colors, to black or some other color which will sell?—A. Exactly.

The witness added that he has to absorb the cost of the redyeing operation as he could not sell the merchandise at any higher price because of it. He said he would have merchandise redyed in order to salvage goods that he could not sell at a price near the original cost.

Plaintiff's first claim is that the merchandise is entitled to free entry under paragraph 1615(a), *supra*, as articles the growth, produce, or manufacture of the United States, returned without having been advanced in value or improved in condition while abroad by any process of manufacture or other means. There is nothing in the record to indicate that the fabric was a manufacture of the United States; on the contrary, Mr. Richter testified that it had been imported from Cantoni at an earlier date and duty paid on it. Foreign merchandise which has been imported, exported, and then reimported, and which has been advanced in value or improved in condition, is subject to duty and is not entitled to free entry under paragraph 1615(a), *supra*.

Even if this merchandise were shown to be of American origin, plaintiff would be required to establish that it had not been advanced in value or improved in condition while abroad. Under a predecessor of paragraph 1615(a), *supra*, it was held that American articles which have been exported may be imported free of duty when *changed* in condition, provided they have not been *advanced* in value or *improved* in condition. *United States* v. *Tower & Sons*, 9 Ct. Cust. Appls. 135, T.D. 37981. The importer must establish that the value of the returned merchandise is no greater and its condition no better than when exported from the United States. *United States* v. *Bird*, 11 Ct. Cust. Appls. 229, T.D. 38991. The words "improved in condition" must be taken in a commercial sense and the actual nature of the commercial entity must be considered. *Wm. C. Cullen* v. *United States*, 5 Treas. Dec. 749, T.D. 24012; *Winthrop-Stearns, Inc.* v. *United States*, 38 Cust. Ct. 1, C.D. 1835; *Wilbur G. Hallauer* v. *United States*, 40 C.C.P.A. (Customs) 197, C.A.D. 518.

In the instant case, plaintiff's witness testified that the merchandise was dyed black because it could not be sold in its original color, "Pumpkin." He admitted that the color black was an improvement because "Pumpkin" was not selling and stated that his firm wanted to redye fabrics which did not sell in their present colors to black or some other color that would sell. It is evident, therefore, that this merchandise was advanced in value and improved in condition commercially by the dyeing operation. It was changed from an article which was unsalable at a price near its original cost to one which could be so sold. Whether or not the importer would have made a greater profit if he could have sold it in its original color is immaterial. The fact is that he could not do so; therefore, a change which rendered the fabric marketable is an improvement and the merchandise is not entitled to free entry under paragraph 1615(a), *supra*.

Plaintiff's second claim is made under paragraph 1615(g)(1), *supra*, which provides that any article exported from the United States for repairs or alterations may be returned upon payment of

duty on the value of the repairs or alterations only. Such merchandise need not be of American origin. *Press Wireless, Inc.* v. *United States*, 6 Cust. Ct. 102, C.D. 438; *Detroit & Canada Tunnel Corp.* v. *United States*, 10 Cust. Ct. 32, C.D. 717; *Dornbusch Agency, Inc.* v. *United States*, 73 Treas. Dec. 971, T.D. 49621. The Customs Regulations (section 10.8(a)) provide that, for the purposes of paragraph 1615(g)(1), the term "repairs or alterations" means restoration, change, addition, renovation, cleaning, or other treatment which does not destroy the identity of the article exported or create a new and different article. In the instant case, the identity of the goods was not lost or destroyed by the dyeing process; no new article was created; there was no change in the character, quality, texture, or use of the merchandise; it was merely changed in color. The Government has conceded and we find that such change constitutes an alteration. *C. S. Emery & Co.* v. *United States*, 71 Treas. Dec. 880, T.D. 49000; *G. L. Ramsey a/c The Juvenile Mfg. Co., Inc.* v. *United States*, 26 Cust. Ct. 603, Reap. Dec. 7978; *John L. Westland & Son, Inc.* v. *United States*, 42 Cust. Ct. 296, Abstract 62803.

We hold, therefore, that the within merchandise is subject to duty, pursuant to paragraph 1615(g)(1) of the Tariff Act of 1930, as amended, only on the value of the alteration, at the rate which would apply to the article itself if not within the purview of said subparagraph. To that extent, the protest is sustained. In all other respects, it is overruled. Judgment will be rendered accordingly.

### CONCURRING OPINION

DONLON, Judge: I concur in the result. In my opinion, the language of paragraph 1615(a), cited by the majority, is not pertinent on the facts before us. These goods are not articles "the growth, produce, or manufacture of the United States." They are "articles, previously imported, with respect to which the duty was paid upon such previous importation." (Par. 1615(a).) The statutory conditions with respect to duty-free reentry of previously imported foreign articles are different from the statutory conditions with respect to duty-free entry of American goods returned. However, the conditions that are applicable here are not shown to have been met.

I agree that, under paragraph 1615(g), plaintiff is subject to duty only on the value of processing of these reentered foreign articles, done outside the United States after their initial dutiable entry and subsequent export.