(C.D. 2233)

Bogue Electric Manufacturing Co. *v.* United States

United States Customs Court, Third Division

(Decided January 23, 1961)

*Barnes, Richardson & Colburn* (*Paul J. Gavin* and *Joseph Schwartz* of counsel) for the plaintiff.

*George S. Leonard,* Acting Assistant Attorney General (*Murray Sklaroff,* trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on an airplane and spare parts, imported from Australia on June 23, 1953, at 15 per centum ad valorem under paragraph 370 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802. It is claimed that the merchandise is entitled to free entry under paragraph 1615, as amended by the Customs Administrative Act of 1938.

This case has been submitted on a stipulation reading as follows:

It is stipulated as follows:

1. The airplane which is the subject of this protest was sold and delivered to the United States Government together with certain special equipment on or about May 24, 1943 by Douglas Aircraft Company as a C47 cargo type aircraft at a total acquisition cost to the government of $96,704.61.

2. Thereafter it was delivered to the Australian Government under lend-lease at a delivered cost of $105,867.00.

3. In January, 1947, the plane was sold by the Australian Disposals Commission at Amberly, Australia, to the Guinea Airways, Ltd. of Adelaide, Australia, and subsequently sold by the latter company to the Australian National Airways, Pty., Ltd. of Melbourne.

4. In May, 1947, Australian National Airways converted the plane to passenger use by installing flooring, seats, and lavatories and insulating and lining the passenger cabin, replacing the double cargo door with a single passenger door, and installing a baggage door for the added baggage compartment.

5. The importer and plaintiff herein in or about the month of June, 1953

purchased the said plane from Australian National Airways at a price of $50,000.00 (U.S.) plus $500.00 (U.S.) for spare parts and entered said plane at the port of Honolulu on or about June 24, 1953. One engine was of other than American origin, the value of said engine at time of exportation being $3,500.00.

6. Thereafter the importer and plaintiff herein, in order to obtain a license from the Civil Aeronautics Board, was required to and did make various changes in said plane.

7. There has been no allowance or payment of drawback upon the said airplane under the Tariff Act of 1930 or any prior tariff act.

8. There has been compliance with all pertinent Customs Regulations relating to free entry under Par. 1615, Tariff Act of 1930, as amended.

Since the stipulation does not refer to the spare parts and since it appears from the official papers that they were admitted free of duty as American goods returned, except for spark plugs manufactured in England, the protest is deemed abandoned as to those items.

The question before the court is whether the airplane is entitled to free entry under paragraph 1615, as amended, which reads:

(a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means. [Free.]

It is clear from the stipulated facts that certain processes were applied to the merchandise while abroad by which it was converted from a cargo airplane to a passenger airplane. The burden rests upon plaintiff to establish that such changes did not result in the production of a new article, and if not, that they did not advance the aircraft in value nor improve it in condition. *United States* v. *Brunswick Radio Corp.*, 22 C.C.P.A. (Customs) 346, T.D. 47374; *Air Carrier Supply Corp. et al.* v. *United States*, 44 C.C.P.A. (Customs) 116, C.A.D. 647.

The case last cited involved two aircraft of American manufacture, which had been exported to Brazil in 1951, converted from cargo to passenger service while there, and returned to the United States in 1953. On the question of the identity of the aircraft, this court stated, in its opinion, *Air Carrier Supply Corporation et al.* v. *United States*, 35 Cust. Ct. 173, 180–181, C.D. 1740:

In our view, the articles, as airplanes, had not been so substantially changed as to affect their identity. The essential parts, the engines and the structure, remained the same (except for alterations in doors and floors). The additions were accessories, equipping the planes for passenger rather than cargo usage. By this, the planes had been changed in condition, but they had not been manufactured into new articles. While the witness Edmonds testified that a cargo plane was not good delivery for a passenger plane, he said that a converted plane was not a different plane altogether. He pointed out that some planes could be converted from cargo to passenger service in 30 minutes and that the conversion of a plane does not alter its performance of its basic duties and that its equipment for passenger use does not change its identity. We conclude that the imported planes were the same merchandise as had been exported, but that they had been changed in condition.

The same situation is involved in the instant case, insofar as the identity of the airplane is concerned.

In the *Air Carrier Supply Corp.* case, *supra*, over $20,000 was expended in improving each aircraft in Brazil. On their return here, they did not meet the requirements of the Civil Aeronautics Administration and additional work had to be performed, including redoing some of the work done in Brazil. Each aircraft, on its return, was appraised or repurchased at a substantially higher price than that at which it had been sold in 1951. Our court of appeals pointed out that the expenditures on the aircraft in Brazil advanced them in value or improved them in condition for use there; that an airplane might be greatly improved in condition, at considerable expense to the owner, and yet not meet the stringent CAA regulations here; that major items of the work done in Brazil were acceptable here; and that appellant did not show that certain detrimental factors effectually nullified the value of the improvements retained. For these reasons, as well as on the ground that the aircraft were appraised at higher values on their return, the court held that they had been advanced in value or improved in condition and that they had been brought one step nearer their final form by manufacturing processes abroad.

Plaintiff has attempted to distinguish the *Air Carrier* case on the ground that here the returned airplane was purchased at a much lower price than its cost to the Government in 1943 and that, in the *Air Carrier* case, the aircraft had been sent to Brazil for the purpose of converting them to passenger service, whereas the instant airplane was delivered under lend-lease to the Australian Government for cargo service.

In spite of these differences, the latter of which does not appear to be pertinent, the record presented does not establish that this airplane has been returned without having been advanced in value or improved in condition while abroad.

As in the *Air Carrier* case, it is evident that the work done on the aircraft while abroad improved it for its use there. Presumably, conversion of a vehicle from cargo to passenger service improves it in condition, since additional accessories and installations are required.

In *South Porto Rico Sugar Co.* v. *United States*, 71 Treas. Dec. 1188, Abstract 36337, mill roll shells had been shipped from Puerto Rico to the Dominican Republic where they had been smoothed and machined to fit factory requirements. After being used until they were worn out, they were returned to Puerto Rico. In its decision, the court said (p. 1189):

* * * Merchandise is dutiable according to its condition at the time of importation. Therefore an enhancement in value or improvement in condition of an article in a foreign country becomes immaterial when it is shown that, through use of the article in the foreign country, such enhancement in value or improvement in condition has been removed or destroyed before being returned.

We have evidence before us to show that the articles shipped from Puerto Rico were valuable pieces of machinery manufactured for a particular purpose, although in rough form, and that the articles when returned to Puerto Rico were unsuited for the purpose for which they were designed and were in such a deteriorated condition that they were suitable only for remanufacture, and were invoiced at only a fraction of their value when originally exported. We believe that the evidence is sufficient to show that the condition of the mill roll shells, when returned to Puerto Rico was not improved when compared with the same articles at the time of exportation, and that the value at the time of importation was not advanced over the value of the articles at the time of exportation.

The difficulty in the instant case is that the record does not show that the advance in value or improvement in condition had been removed or destroyed before the aircraft was returned. The only evidence here is that, in 1943, the airplane was sold to the United States Government for $96,704.61, was delivered under lend-lease to Australia at a cost of $105,867, and was purchased by the plaintiff in 1953 (10 years later) for $50,000. There is nothing in the record to show what the value of the airplane was in 1947 when it was converted into passenger service, what the cost of the changes amounted to, or whether the decrease in value was due to obsolescence, normal wear and tear, or other factors. The mere fact that various changes had to be made in order to obtain a license from the Civil Aeronautics Board does not show that there had been no improvement of the aircraft while abroad.

We hold that the record presented is insufficient to overcome the presumption of correctness attaching to the collector's finding that this merchandise was not entitled to free entry under paragraph 1615(a), supra, as American goods returned, without having been advanced in value or improved in condition while abroad by any process of manufacture or other means, and was dutiable at 15 per centum ad valorem under paragraph 370 of the Tariff Act of 1930, as modified.

The protest is overruled and judgment will be rendered for the defendant.