**MATTEL, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4805; Court No. 74–4–01035.**

United States Customs Court.

June 4, 1979.

Irell & Manella, Los Angeles, Cal. (Richard H. Borow, Louise A. Lamothe (Wheeler) and Noel K. Torgerson, Los Angeles, Cal., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C. (Joseph I. Liebman, Attorney in Charge, Field Office for Customs Litigation, New York City, Saul Davis, Trial Attorney, New York City), for defendant.

RICHARDSON, Judge:

The merchandise in this action consists of United States manufactured phonograph records which were packaged in Mexico and exported therefrom in 1972 in association with other merchandise (toy telephones) not in issue here. Upon entry at Los Angeles-Long Beach, California, the records were classified in liquidation under TSUS item 737.90 as modified by T.D. 68–9 as toys, and parts of toys, not specially provided for, other, at the duty rate of 17.5 *per centum ad valorem*. The plaintiff-importer claims

primarily that the records are entitled to duty-free entry under TSUS item 800.00 as products of the United States, returned without advancement in value or improvement in condition. Alternatively, plaintiff claims that the records are entitled to a duty-free allowance under TSUS item 807.-00 as American components of articles assembled abroad. And, in the event the court determines that neither item 800.00 nor item 807.00 is applicable, plaintiff claims that the records should be classified under the *eo nomine* provision for phonograph records in TSUS item 724.25 as modified by T.D. 68–9 at the duty rate of 5 *per centum ad valorem.*

Claim-supporting documents, i. e., foreign shipper's declaration certifying to the best of his knowledge and belief the articles are products of the United States, and are returned to the United States without having been advanced in value or improved in condition by any process of manufacture or other means; owner's declaration on customs Form 3311 that the articles are the manufacture and product of the United States and are returned without having been advanced in value or improved in condition by any process of manufacture or other means; district director of customs' certificate of exportation on customs Form 4467 showing that no drawback, bounty, or allowance has been paid or admitted thereon; foreign assembler's declaration, owner's endorsement on foreign assembler's declaration, which are prerequisite to classification of imported merchandise under either item 800.00 or item 807.00 have admittedly not been filed for the records in connection with any of the ten entries involved in this action as required under section 10.1 of the Customs Regulations (19 CFR 10.1, revised as of January 1, 1972). Such documents have, however, been tendered by plaintiff to the court under the late filing permitted under section 10.112 of the Customs Regula-

tions * (19 CFR 10.112) in the absence of *willful negligence* or *fraudulent intent.*

■ Counsel for the defendant concedes that since liquidation has not become final and plaintiff failed to comply with customs filing regulations before the customs service lost jurisdiction to act on the claim-supporting documents, and jurisdiction is now in the Customs Court, that the claim-supporting documents may be filed with the Customs Court if the filing complies with 19 CFR 10.112 in that there is a showing that the late filing has not been due to "willful negligence or fraud." (R. 14–15.) Counsel for defendant contended that there was willful negligence and undertook to adduce evidence to support his contention.

■ At the trial the court took this issue under advisement, and has now concluded that the documents tendered to the court and the testimonial record do not establish compliance with the mandatory regulations regarding documentation for alleged duty-free components, since the importer has failed to meet its burden of establishing that its failure to file in a timely manner was not due to "willful negligence." In fact the record shows that the failure to timely file was *intentional*, which for purposes of section 10.112, is the legal equivalent of willful negligence.

Mr. Kenneth W. Waymire, director of import-export administration of Mattel, Inc., and Mr. Richard E. Segesser, manager of import-export documentation, testified that they intended to file, and believed they had filed all necessary information in support of Mattel's claim for duty-free entry, until this litigation commenced. (R. 93–94, 137, 173.) Plaintiff did file free-entry documents with the customs service, but specific mention of the phonograph records was omitted.

Mr. Waymire also testified that when he knew customs was not going to give duty-

---

* Section 10.112 read in 1972 "Whenever a document, form, or statement required by regulations in this part to be filed in connection with the entry is not filed at the time of the entry or within the period for which a bond was filed for its production but failure to file it was not due

to willful negligence or fraudulent intent, such document, form, or statement may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final."

free treatment to components, he did not file documents required by the regulations. (R. 104–05.) Mr. Segesser testified that it was standard operating procedure in 1972 *not* to file the necessary documents to claim duty-free treatment under TSUS item 800.-00 or 807.00. The footnote on plaintiff's Exhibit 15–B (constructed cost figures on the Mattel-O-Phone filed in 1972 by Mr. Waymire) states: "Importer requesting Judicial Ruling that this merchandise is applicable under Items 800.00 or 807.00 T.S.U.S." (R. 145–46.) Exhibits 15–D, 15–E, and 15–F contain the same footnote. This notice of an intention to seek a judicial ruling as to the applicability of a lower dutiable classification shows an intent not to seek a timely ruling by the customs service.

█ The court also reserved rulings on the admissibility into evidence of all exhibits with respect to duty-free entry, except Collective Exhibit 10 (Certificate of Registration and Certificate of Return on Form 4455), which the parties stipulated to admit into evidence. The signers and presenters of the various documents which plaintiff seeks to have admitted, Waymire and Segesser, had no personal knowledge of the factual matters contained therein and utilized and relied upon facts and figures produced by Mattel departments other than their own for the facts stated therein. Mr. Waymire, testified that he did not personally verify the correctness of the contents of the documents, nor would anyone in his department do so. (R. 113.) He had no personal knowledge of the contents of the claim-supporting documents, Exhibits 9, 11, 13 and 19, and he did not supervise the clerks who prepared the documents which he signed. (R. 98.) None of the people who produced said facts and figures of constructed costs were present in court to support their work product. It was not for defendant to call witnesses to refute the testimony of persons who did not prepare, but merely signed, the documents. It was for plaintiff to produce the persons who were knowledgeable on the facts and who prepared the documents. Since the collective exhibits and testimonial record show that none of the individuals who filled out or signed the documents necessary for duty-free entry possessed the requisite personal knowledge of the facts or supervisory responsibility of those who supplied the facts to which they were testifying, the documents are not admissible into evidence.

Moreover, the *intentional* character of the nonfiling of the duty-free-entry documents is reflected in the manner in which the phonograph records were entered. Entry of the records was governed by a superceding *IMPORTER'S DUTY CODE WORKSHEET* (To be attached and incorporated therein as part of the Consumption Entry) which was typed June 21, 1972, and given to the broker by plaintiff. Under this code, Category "GGGG" referred to "Records, Toys, NSPF of rubber or plastics, other" which were listed as being classifiable under TSUS item "737.9020" at the duty rate of "17.5%", and under which was the notation "Importer asking for judicial ruling at "724.2500" at the rate of duty of "5%"." This duty code worksheet is included in every entry before the court. And in every entry, code "GGGG" is referenced to yet another document entitled "DUTY CALCULATION WORKSHEET" which, in some instances, is signed by R. Segesser—plaintiff's manager of import-export documentation. In this document under code "GGGG" the notation "N/A" [meaning not applicable] has been entered opposite the columns "800.00 T.S.U.S." and "807.00 T.S.U.S."

In fact, in one instance involving Entry No. 73–120890 dated August 21, 1972, of protest 27043004626, a mistake was made in entering a value figure opposite the column "800.00 T.S.U.S." on the duty calculation worksheet under code "GGGG". However, this value figure was erased by means of a type correction fluid and the notation "N/A" written over it. Thus, it clearly appears that plaintiff's *supervisory* personnel deliberately directed the entry of the records under a *dutiable* classification with the expectation of seeking judicial reclassification of the records under another *dutiable* category—a posture in which claim-supporting documents would constitute no part of the entry documentation.

Since it is not the function of section 10.112 to relieve an importer from the consequences of its deliberate acts, the court would be obliged on this record to leave the defaulting importer where it found itself and not permit late filing of the claim-supporting documents. It follows, therefore, that in the absence of compliance with the requirements of section 10.1 plaintiff's claims for classification of the records under either item 800.00 or item 807.00 must fail, and the court so holds.

Turning now to plaintiff's residual claim for classification of the records under item 724.25, the evidence discloses that the records are of three types:

(1) Mattel-O-Phone records (Exhibit 1–B) consisting of 4-inch plastic discs with interleaved spiral grooves [independent sound tracks in each groove] to produce sound when played on the phonograph inside the Mattel-O-Phone housing (Exhibit 1–A) and packaged in an assortment of 5 records (each with a different sound track) in the Mattel-O-Phone retail package;

(2) Talking Pictures-Alphabet Phone records (Exhibit 2–B) consisting of 2½-inch plastic discs with spiral grooves to produce sound when played on the phonograph inside the Alphabet Phone housing (Exhibit 2–A) and packaged in an assortment of 6 records (each with a different sound track) in the Alphabet Phone retail package;

(3) Talking Pictures-Nice Neighbors Phone records (Exhibit 3–B) consisting of 2½-inch plastic discs with spiral grooves to produce sound when played on the phonograph inside the Nice Neighbors Phone housing (Exhibit 3–A) and packaged in an assortment of 6 records (each with a different sound track) in the Nice Neighbors Phone retail package.

At the trial defendant stipulated that the records in issue are phonograph records. Additionally, Joseph S. Whitaker, vice president of marketing for Mattel Toy Co., a division of plaintiff corporation, testified that the phones had an intended use as toy telephones simulating for the child telephone play, utilizing the imported records. The witness testified that on the basis of marketing research studies the actual and chief use of the phonograph records was the intended use, and that the records had no independent play value apart from such intended use. Additionally, it appears that the records are at times sold separately as replacements or supplements.

■ Plaintiff argues that since the records are specifically provided for they must be separately classified, citing *Craig Panorama, Inc. v. United States*, 59 Cust.Ct. 97, C.D. 3085 (1967). Defendant argues that the records are an integral component of the toy telephone, and must be classified as an entirety with the telephone. The court agrees with plaintiff.

■ In *Craig Panorama, Inc. v. United States, supra*, the merchandise consisted of 9-volt batteries imported with radios and earphones. The court sustained the classification of the batteries as *separate entities* under the fifth clause of paragraph 353 of the Tariff Act of 1930 as modified by T.D. 52739 as against the importer's claim for classification of the batteries under the second clause of that paragraph as *entireties* with the radio, citing, among other things, the well known maxim that the mere fact that two articles are designed and constructed to be used together does not necessarily make either a part of the other. The same maxim is applicable here.

■ In the 1930 and prior Tariff Acts there was no separate *eo nomine* provision for phonograph records, and such records were classified under the provision for phonographs and parts thereof in paragraph 1542 of the 1930 Act and in various provisions of predecessor Acts. See footnote 2 in *United States v. Radio Corp. of America*, 41 CCPA 137, 138, C.A.D. 541 (1953) citing *American Express Co. v. United States*, 4 Ct.Cust.Appls. 279, T.D. 33490 (1913). However, with the advent of the Tariff Schedules and the carving out of a separate *eo nomine* provision therein for phonograph records in item 724.25 while retaining intact the provision for phonographs and parts thereof in item 685.32, Congress clearly evidenced an intention to treat phonograph records as *separate entities*. Consequently,

there no longer appears to be any sound reason for treating phonograph records as parts of or as entireties with phonographs for tariff purposes. *Cf. Poynter Products, Inc. v. United States*, 64 Cust.Ct. 293, 298, C.D. 3993 (1970).

An examination of the toy telephones with which the imported records are associated in use reveals them to be nothing more than phonographs disguised as simulated telephones—undoubtedly to serve as the medium for the attraction of children. But defendant has conceded that the involved records are phonograph records. And the evidence establishes that the records have no independent play value in and of themselves, as do, perhaps, the telephones. Moreover, after playing and listening to the record samples in evidence the court is convinced that these two-way conversational records possess an instructional or educational character and, hence, are more suitable for the mental development of children than for their amusement. See, *B. Shackman & Company, Inc. v. United States*, 67 Cust.Ct. 372, C.D. 4300 (1971); *Thorens Co. v. United States*, 15 Cust.Ct. 165, C.D. 965 (1945).

Therefore, on the evidence presented the court concludes that the involved records are not "toys" or "parts of toys" within the ambit of item 737.90, and are properly classifiable as claimed as "phonograph records" within the meaning of item 724.25. Judgment will be entered herein accordingly.