(C.D. 4836)

SOUTHERN AIR TRANSPORT, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 75-6-01590

(Decided Jan. 4, 1980)

*Howard, Poe & Bastian* (*James H. Bastian* at the trial and on the brief) for the plaintiff.

*Alice Daniel,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation (*Sidney N. Weiss* at the trial and on the brief), for the defendant.

RICHARDSON, Judge: This action involves the dutiable status of a Douglas DC-6B airplane bearing manufacturer's serial No. 44550 and U.S. Federal Aviation Administration registration No. N93459. The plane was imported at Miami, Fla., from Taiwan on October 1, 1973, and entered and classified in liquidation as a *used* or *rebuilt* airplane under TSUS item 694.40 at the duty rate of 5 *per centum ad valorem.* Plaintiff-importer claims that the aircraft should be' classified under TSUS item 800.00 as a *product* of the United States not advanced in value or improved in condition, duty free, or, in the alternative, under TSUS item 807.00 as an *article* assembled abroad with U.S. components, with duty assessed only on the value of foreign labor.

The operative facts in the case are not in dispute. The record shows that the plane was purchased new from the Douglas Aircraft Co., Inc., in 1958 by Asiatic Aeronautical Co., Ltd. (AACL), later known as Air Asia Co., Ltd., for $1.6 million, and immediately exported to Taiwan, Republic of China, for use in the operation of a scheduled airline service of which AACL was part owner. For some 15 years the plane was operated as a combination passenger-light cargo aircraft in the Far East. In August 1973, the plane was acquired by plaintiff by purchase from Air America, Inc., the parent corporation of AACL, for $134,500. Plaintiff then expended some $44,611.50 in labor and material costs to have work performed on the plane in Taiwan, after which the plane was returned to the United States where it was entered as aforesaid.

Some of the work performed in Taiwan on the plane prior to importation entailed replacement of main cabin flooring with stronger flooring, replacement of fore and aft passenger doors in the main cabin with larger cargo doors which necessitated opening and modifying the fuselage to accommodate the larger doors, the removal of the overhead passenger hatrack in the main cabin, the removal of two toilets and a coatroom in the forward main cabin, the substitution of a bucket-type, portable toilet in the rear main cabin for the more sophisticated toilet originally installed there, and the substitution of a movable galley for the stationary galley and tray container storage area originally built into the main cabin.

The object of these modifications was said to be the preparation of the plane for a combination cargo-passenger service stateside with emphasis, insofar as cargo carrying capacity is concerned, on the

carriage of larger, bulkier cargo on the main deck within existing payload limits. The modifications resulted in a reduction of the aircraft's passenger capacity from a 73-seat configuration to a 27-seat configuration.

The factual underpinnings in the case are amply covered by allegations in plaintiff's pleading. Noticeably absent from the amended complaint, however, is any reference to compliance with requisite Customs Regulations relative to item 800.00 or 807.00 entry. On the other hand, defendant alleged in an affirmative defense in its answer the fact of plaintiff's noncompliance with applicable Customs Regulations relating to an item 800.00 or 807.00 entry. And, at the conclusion of plaintiff's case, defendant moved to dismiss the action for "failure to state a prima facie case" (R. 89). The court reserved decision on the motion.

In its brief, plaintiff does not address itself to the matter of compliance with applicable Customs Regulations. And on this phase of the case, defendant argues in its brief that compliance with appropriate Customs Regulations is a condition precedent to recovery under items 800.00 and 807.00, and asserts that plaintiff has not complied with the regulations. The court agrees with defendant.

Exemption from duty on imported merchandise in whole or in part is not absolute under the TSUS. Such an exemption is conditioned upon compliance with applicable Customs Regulations (general headnote 11, TSUS; headnote 1, schedule 8, TSUS; secs. 10.1 and 10.2 of the Customs Regulations (19 CFR secs. 10.1, 10.2)), unless compliance has been waived by the appropriate Customs official. Section 10.1 requires the filing of (1) a foreign shipper's declaration, (2) an owner's declaration on Customs form 3311, and (3) a district director's certificate of exportation on Customs form 3311, in connection with an item 800.00 entry. And section 10.2 requires the filing of (1) a foreign assembler's declaration, and (2) an owner's endorsement on the assembler's declaration, in connection with an item 807.00 entry. See *Maple Leaf Petroleum, Ltd.* v. *United States*, 25 CCPA 5, T.D. 48976 (1937). In the instant case, plaintiff neither pleaded nor proved compliance with or waiver of the documentary requirements of either section 10.1 or section 10.2 of the Customs Regulations. Plaintiff has not even addressed itself to the issue of regulatory compliance raised in defendant's affirmative defense, and also, by implication, on the motion to dismiss.

In fact, plaintiff has, in effect, undertaken to *bypass* the regulatoay compliance issue when it made a *dutiable* entry of the aircraft. *Cf. McDonnell Douglas Corp.* v. *United States*, 75 Cust. Ct. 6, 13–14, C.D. 4604 (1975), *decided on rehearing*, 78 Cust. Ct. 92, C.D. 4692 (1977). However, plaintiff cannot properly assert its claim for duty exemp-

tion on the aircraft for the first time in court, absent a late filing of the requisite documents. See *Mattel, Inc.* v. *United States*, 82 Cust. Ct. 234, C.D. 4805 (1979), *appeals pending*, where there was an obligation to assert it initially at the administrative level. As our appellate court said in *Maple Leaf Petroleum, Ltd.*, *supra*, at page 9, "The party asking the special grant or favor (duty exemption), of course, would be required to make a showing of the essential facts required by the regulation to the collector at the time of entry and not in the way of evidence at some subsequent trial."

But even if the exemption supporting documents had been filed with the district director initially under an item 800.00 or 807.00 entry in accordance with the regulations, or their filing waived by the district director as he is now empowered to do under these regulations (see sec. 10.1 (d) and (g) of the Customs Regulations (19 CFR sec. 10.1 (d) and (g)), or subsequently filed with the court by leave of court under the late filing of documents provision, the court would be disinclined, as a matter of law, to accord the aircraft the duty exemption now sought by plaintiff here, given the facts of record concerning the extensive work performed on the aircraft in Taiwan prior to its departure for the United States on the voyage of importation.

Discounting the fact that the installation of cargo window bars in the main cabin of the plane was an item wholly of *foreign manufacture*, the contracting parties themselves regarded the installation of cargo doors and heavy flooring in the main cabin to be items of major importance. Thus, the contract read as to such items: "Such materials and drawings must meet USFAA standards for major alterations being accomplished in accordance with previously approved data (STC's)." And, although it is true that the aircraft possessed only residual value at the time of these alterations, and, further, that a number of facilities built into the aircraft for passenger convenience and comfort were simultaneously removed, i.e., galley and tray container storage, hatracks, toilets, and coatroom, the alterations, nevertheless, resulted in a change in condition which increased its residual value in the court's opinion.

The realities of the marketplace force the conclusion that the days for commercial passenger service for this vintage piston-engine, propeller-driven airplane were numbered even at the time of its acquisition by plaintiff. In the Far East, the plane had already been replaced in regularly scheduled commercial flights by a newer, larger aircraft, thus relegating it to unscheduled (supplemental) flights or charter service. Now, destined for service stateside after some 15 years of service abroad, the plane faced an even bleaker future here in competition for passenger service with jet aircraft in a jet-age, technology-oriented society. Hence, against this almost certain future,

the alterations performed on the plane in Taiwan prior to its departure for the United States must be viewed as equipping it to perform a more useful cargo service here which was calculated to increase its earning capacity, and thereby postpone obsolescence. Obviously, therefore, the refurbished airplane had increased value which would disqualify it for item 800.00 treatment notwithstanding its domestic origin.

And neither would the aircraft qualify for item 807.00 treatment since it was never an *assembled article* within the meaning of that provision. From the time of its manufacture until it underwent modification in Taiwan the plane remained a complete and functional article of commerce. At best, only some of its existing parts and components, i.e., flooring and doors, were removed and replaced while the plane was abroad. However, the plane itself was never *assembled* abroad from *fabricated components* of U.S. origin.

For the reasons stated, defendant's motion to dismiss is granted. Judgment will be entered herein accordingly.