The **AVIATION GROUP, INC.,** Plaintiff,

v.

The **UNITED STATES,** Defendant.

**Court No. 82–2–00248.**

United States Court of International Trade.

Aug. 7, 1985.

---

4. Defendants' Rule 39(c) motion for an advisory jury is moot due to the granting of the Rule

39(b) request.

598

Haythe & Curley, Raleigh, N.C., Samuel T. Wyrick, III, Raleigh, N.C., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, and Susan Handler-Menahem, U.S. Dept. of Justice, Civ. Div., New York City, for defendant.

## Opinion and Order

RESTANI, Judge:

This matter is before the court on plaintiff's Rule 56 motion for summary judgment and defendant's Rule 56 cross-motion for summary judgment. This case involves the tariff classification of an airplane which was manufactured in the United States, exported to Canada and returned to the United States. Jurisdiction is based on 28 U.S.C. § 1581(a) (1982).

### I.

In 1969 the Grumman Gulfstream I airplane at issue, which was manufactured in the United States and structured as an eleven seat noncommercial passenger plane, was sold to a Canadian buyer for $U.S. 825,000. In 1972 the airplane was resold in Canada for $C 745,000 and leased by the second buyer to the Canadian government to be used as a noncommercial passenger plane to transport dignitaries throughout the Northwest Territories. For this purpose, in 1973 the lessee installed an eleven to nineteen seat convertible seating configuration in place of the original eleven seat configuration at a cost of $C 35,330. The alteration was made to accommodate the recurring need to transport larger groups of government personnel throughout the Arctic. The parties agree that the convertible seating configuration was of no use to plaintiff.

In addition to changes in the seating, the lessee equipped the airplane with a specialized avionics system designed for naviga-

tion and communication in the Arctic.[1] This specialized avionics system was necessary due to the long distances between ground stations in the Northwest Territories. The parties agree that this specialized avionics system was not necessary for flight in southern Canada or in the continental United States. In 1977, the airplane was sold to a third Canadian buyer for $C 800,000.

In 1979 plaintiff, an American corporation, purchased the airplane for $U.S. 800,-000 primarily for use in the United States cargo market. Plaintiff purchased the airplane because plaintiff holds a certificate to install specialized cargo doors on this type of airplane alone. When the airplane re-entered the United States, it was still equipped with the convertible seating configuration and the specialized avionics system. Plaintiff, however, intended to remove both the convertible seating configuration and the specialized avionics system and to install a cargo door.

Customs classified the airplane under item 694.4020, Tariff Schedules of the United States (TSUS) (1978), "aircraft and spacecraft, and parts thereof, airplanes, nonmilitary, used or rebuilt." Under this classification, Customs assessed a 5% *ad valorem* duty of $40,000. Plaintiff protests the classification and contends that the airplane is properly classifiable under item 800.00, TSUS (1978), "product(s) of the United States when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad." Under the proposed classification, the airplane would re-enter the United States duty free. This court, therefore, must decide whether plaintiff's airplane was "advanced in value or improved in condition" as a result of the installation of the convertible seating configuration and the specialized avionics system.

## II.

"The question of whether merchandise is advanced in value or improved in condition by a manufacturing process is one of fact." *Air Carrier Supply Corp. v. United States*, 44 CCPA 116, 119, C.A.D. 647 (1957), *citing United States v. Anderson & Co.*, 2 Ct.Cust.App. 350, T.D. 32,080 (1911). The burden is on the importer to show, as a matter of fact, that the value of the returned merchandise is no greater and its condition no better than when exported from the United States. *Air Carrier Supply Corp.*, 44 CCPA at 119; *Amity Fabrics, Inc. v. United States*, 43 Cust.Ct. 64, 67, C.D. 2104 (1959); *United States v. Bird*, 11 Ct.Cust.App. 229, 232, T.D. 38,991 (1922).

Both plaintiff and defendant contend that this case should be resolved on motion for summary judgment because there is no genuine issue of material fact remaining. Defendant contends that while the airplane was in Canada, it was "advanced in value or improved in condition," while plaintiff contends that it was not. Plaintiff and defendant reach opposite conclusions because each proposes a different test to determine whether or not the airplane was "advanced in value or improved in condition."

Plaintiff asserts that the appropriate test is subjective and requires examination of the airplane at the time of importation to determine whether or not the "merchandise advanced one step nearer its intended final form by manufacturing processes abroad." *Air Carrier Supply Corp.*, 44 CCPA at 121. Plaintiff also contends that an item's "intended final form" is determined by the future intended use of the item by the importer. Plaintiff relies on *Southern Air Transport, Inc. v. United States*, 84 Cust.Ct. 7, C.D. 4836 (1980) for this proposition. The court rejects a purely subjective test for this type of item. Not only does precedent fail to support this view as will be discussed, but such a test could lead

---

**1.** The cost of the specialized avionics is not made clear in either plaintiff's or defendant's brief.

to manipulation of the classification process.

Rather than a subjective test, defendant argues that the appropriate test is whether or not any changes were made while the item or merchandise was abroad. Defendant argues that if any "improvement" was made while the item was abroad, whether or not it has an economic value related to use in the United States, the change itself would prevent classification under item 800.00, TSUS. As support, defendant asserts that the addition of the words "while abroad" in item 800.00, TSUS, was purposeful and these words show that a value test related to use in the United States was not intended.

The words "while abroad," however, were added when the revised Tariff Schedules were adopted in 1962. Item 800.00 TSUS (1963). The predecessor section, paragraph 1615(a) of the Tariff Act of 1930, was rewritten and codified as item 800.00 in Schedule 8, Part 1, Subpart A, along with some other related duty free provisions. In explaining this subpart, the Tariff Commission stated, "the general conditions governing free entry have been made uniform and an effort has been made to improve the language *without significant changes of substance.*" *Tariff Classification Study*, Explanatory and Background Materials, Schedule 8, at 12 (November 15, 1960) (emphasis added). As the purpose of the 1962 revision was to make the free entry provisions uniform and not to change the manner in which the provisions were applied, the court does not agree that the words "while abroad" hold the significance claimed by defendant.

Defendant also argues that item 800.00, TSUS, was specifically intended, *inter alia*, to foster the use of American labor and thus to discourage the performance of any work on American goods while abroad. The language that defendant cites in support of this argument consists of a dissenting judge's explanation of an 1890 word change as supported by the 1934 Tariff Commission's discussion of the implications of the 1888 elections.[2] This support is too remote to be persuasive. Defendant has cited no legislative history of the 1890 act which indicates the purpose of the words "other means." Instead, what is clear from the legislative history of the initial appearance of the provision in 1790 excluding re-entered American goods from duties is that Congress did not intend to raise revenue by taxing such goods.[3] *Cf.* United States Tariff Commission, *The Tariff and Its History*, U.S. Government Printing Office, 1934 at 71. (In 1819 protection ceased to be an incidental objective of tariff legislation and instead became a direct objective.) Furthermore, defendant concedes that any improvement made while abroad and removed before re-entry would not cause the item to be dutiable. Removal before re-entry, however, would involve foreign labor and would not benefit American labor. If the addition of the words "other means" or "while abroad" to item 800.00, TSUS, were intended to protect American labor, it would be inappropriate to interpret the statute in a manner which would encourage use of foreign labor and thus be disadvantageous to American labor. For the above reasons the court does not agree that the determination of whether an item has been "advanced in value or improved in condition" should be based on either a subjective test as plaintiff urges or a broad improvement made "while abroad" test as defendant urges.

2. Defendant quotes, "the legislative history of the words 'other means' makes it clear that protection of domestic industry and labor was intended...." *United States v. John V. Carr & Son, Inc.,* 61 CCPA 52, 54, 496 F.2d 1225, 1227 (1974) (Miller, J., dissenting).

3. A provision excluding re-entered American goods from duties first appeared in the Tariff Act of August 4, 1790 which was "(a)n act making provision for the (payment of the) debt of the United States." Tariff Act of August 4, 1790, ch. 34, 1 Stat. 138 (obsolete). In Section 23 of that act, ch. 35, 1 Stat. 145, Congress stated with regard to "articles of the growth or manufacture of the United States, exported to foreign countries, and brought back to the United States, ... it was not the intention of Congress that they should be so subject to duty."

## III.

■ There is little legislative history to assist the court in determining what is meant by "advanced in value or improved in condition." The 1950 Summaries of Tariff Information provide only a minimal and general explanation of the provision. The Tariff Classification Study of 1960 provides detailed explanations of most of the schedules, but not of Schedule 8. During the past three decades, however, three similar situations involving airplane classifications under item 800.00, TSUS, or its predecessors, have been adjudicated.

In *Air Carrier Supply*, two cargo airplanes were sold for approximately $U.S. 60,000 each and exported to Brazil.[4] While in Brazil the airplanes were converted to passenger use and placed into passenger service. Two years later the airplanes were sold for approximately $U.S. 90,000 each and returned to the United States where they required further modifications to meet the Civil Aeronautics Administration requirements for passenger-carrying operations. The court held that the airplanes, upon return, were "advanced in value or improved in condition" because they were like "merchandise [that had] advanced one step nearer its intended final form by manufacturing processes abroad." *Air Carrier Supply*, 44 CCPA at 121.

In making this determination, the *Air Carrier Supply* court considered the $U.S. 20,260 in expenses incurred per airplane in making the conversions abroad and the increased selling price. Further, the court noted that the changes improved the airplanes for use abroad and that the major changes that were made while the airplanes were abroad were acceptable in the United States. Finally, the court made an analogy to manufactured goods and considered the changes an advancement along the manufacturing process.

In *Bogue Electric Manufacturing Co. v. United States*, 46 Cust.Ct. 59, C.D. 2233 (1961), a cargo airplane was sold for $U.S. 96,704 and exported to Australia. Four years later the airplane was converted to passenger use. The airplane was sold six years later for $U.S. 50,000 and returned to the United States as a passenger airplane. The *Bogue* court noted the record was silent as to the condition of the airplane at importation and further noted the airplane was improved for use here. The *Bogue* court held that the record was insufficient to rebut Customs' decision excluding the airplane from classification pursuant to paragraph 1615(a), the predecessor to item 800.00, TSUS. *Bogue*, 46 Cust.Ct. at 63.

In *Southern Air Transport*, a DC–6B airplane, which was exported to Taiwan at a value of $U.S. 1,600,000, purchased for $U.S. 134,500 and returned, 15 years later by a United States firm, was not classified under item 800.00, TSUS. *Southern Air Transport*, 84 Cust.Ct. at 8. Prior to returning to the United States, $U.S. 44,611 of passenger use to cargo use modifications were made. The *Southern Air Transport* court held that the plaintiff failed to plead and prove compliance with or a waiver of the applicable Customs Regulations for duty-exempt entries. *Southern Air Transport*, 84 Cust.Ct. at 9–10. In *dicta*, the court went on to say that the modifications resulted in a change of condition of the airplane. The court also indicated that the modifications increased the value because they equipped the airplane to perform a more useful service in the United States. *Southern Air Transport*, 84 Cust.Ct. at 10–11.

---

**4.** Defendant argues that *Air Carrier Supply* is not applicable because the case was decided in 1957. At that time the statute read "(a)rticles the growth, product, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means." Tariff Act of 1930, Title II, Par. 1615(a) (interim history omitted, repealed 1962). When the revised Tariff Schedules were adopted in 1962, that paragraph was rewritten and codified under the current item 800.00, TSUS. In light of the Tariff Commission comment that no significant changes of substance were intended, the court does not agree with defendant's argument that *Air Carrier Supply* is no longer applicable.

In all three of these cases the court noted that the modifications improved the airplanes for their return use in the United States. In *Air Carrier* and in *Bogue* the modifications involved changing the use of the airplane from cargo to passenger use while the airplanes were abroad. In *Southern Air Transport* the court noted that the objective of the modification was towards intended use in the United States but further noted that the modification also increased the residual value of the airplane. In none of the cases did the court, however, make a subjective determination based on the intended use by the United States importer. On the other hand, the court did not apply a broad improvement made "while abroad" test. These cases support the conclusion that the determination of whether or not an item has been "advanced in value or improved in condition" depends on the residual value of the item to a reasonable United States importer at the time of importation. "The words 'improved in condition' must be taken in a commercial sense and the actual nature of the commercial entity must be considered." *Amity Fabrics*, 43 Cust.Ct. at 67, *citing Wm. C. Cullen v. United States*, T.D. 24012, 5 Treas.Dec. 749 (1902). "Under a predecessor of [this section], it was held that American articles which have been exported may be imported free of duty when changed in condition, provided they have not been advanced in value or improved in condition." *United States v. Tower & Sons*, 9 Ct.Cust. App. 135, 136–137, T.D. 37,981 (1919). Thus, the economic value of the change is the key to classification here.[5]

In this case, the modifications made abroad did not change the use of the airplane. Both before and after the convertible seating configuration and specialized avionics were installed, the airplane was intended for noncommercial passenger use. Both parties agree that the specialized avionics were of no value to plaintiff and

not necessary for flight in the continental United States or southern Canada. Plaintiff argues that the convertible seating configuration is of no value to plaintiff importer and offers as support an affidavit of Daryl Brown, a previous owner. Brown's statements regarding the changed seating configuration are in terms of his personal feelings, not in terms of the market place and not in terms of an objective buyer. Defendant argues that the expenditure of money on changing the seating configuration while the airplane was abroad constitutes an advancement in value for use while abroad. Further, defendant argues that the option of being able to carry more people with the convertible seating configuration was an improvement in condition to the owner at the time of the change. Neither party addresses whether the specialized avionics or the convertible seating configuration were of value upon re-entry into the United States to someone other than the importer or the owner at the time the modifications were made.

Thus, the court finds that a genuine issue of material fact remains as to whether or not the modifications increased the residual value of the airplane as determined at the time of re-entry into the United States so that the airplane may be said to have been "advanced in value or improved in condition." Because this genuine issue of material fact remains, summary judgment is not appropriate. Accordingly, all pending motions are denied and plaintiff is directed to request a trial date within the next 60 days for a trial to commence within the next 120 days.

---

**5.** Defendant argues that the court's ruling renders the phrase, "improved in condition," redundant. That phrase, however, may have meaning separate from the phrase "advanced in value" in the case of partially manufactured goods. In

the case of the fully assembled airplane involved here, "improved in condition" and "advanced in value" have no discernably different meaning for tariff purposes.